**UNITED STATES of America,**
**Appellant,**

v.

**Arthur K. GOSHORN, Appellee.**

**No. 79–1671.**

United States Court of Appeals,
First Circuit.

Argued April 10, 1980.
Decided Aug. 14, 1980.

John H. LaChance, Asst. U.S. Atty., Framingham, Mass., with whom Edward F. Harrington, U.S. Atty., Boston, Mass., was on brief, for appellant.

Nancy Gertner, Boston, Mass., with whom Silverglate, Shapiro & Gertner, Boston, Mass., was on brief, for appellee.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

COFFIN, Chief Judge.

The appellee, Arthur K. Goshorn, was charged in a two-count indictment with possession of a controlled substance with intent to distribute and conspiracy to possess with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1), 846. Goshorn pleaded not guilty to both counts and subsequently filed a motion to suppress certain evidence found in the trunk of an automobile seized and searched by agents of the Drug Enforcement Administration (DEA) at the time of his arrest. The district court, after holding a hearing, granted Goshorn's motion to suppress. The government has appealed pursuant to 18 U.S.C. § 3731.

The relevant facts supportably found by the district court may be summarized as follows:

On May 21, 1979, an informant arranged to introduce DEA Special Agent James Sullivan to one Donald Levine for the purpose of negotiating the sale and delivery of a quantity of LSD. Beginning at 6:15 p. m., DEA agents maintained both stationary surveillance of the site selected for the transaction, an Arco gas station on Memorial Drive in Cambridge, Massachusetts, and moving surveillance of Levine. At approximately 7:45, they observed a Volvo station wagon driven by Levine enter the Arco station, exit the station a few seconds later, and stop across the street to pick up Goshorn, who had been observed walking around in the vicinity of the Arco station for the preceding twenty-five minutes. Agents followed Levine and Goshorn to nearby Putnam Street. There Goshorn exited the Volvo and walked to a 1973 Plymouth Valiant with New York license plates, opened the trunk, removed a newspaper and a jacket, and closed the trunk. Goshorn then walked back toward the Arco station, eventually stopping and sitting on a park bench on Memorial Drive.

Levine drove back to the Arco station and met with Special Agent Sullivan to discuss

the sale of LSD. Levine told Sullivan that "his man" was nearby and had a large quantity of LSD ready to deliver. Levine then left the Arco station, picked up Goshorn, and proceeded back to Putnam Street. Goshorn exited the Volvo and, after walking around briefly, went to the Valiant. He opened the trunk, removed a dark-colored shoulder bag, and rejoined Levine. Levine returned alone to the Arco station with a white bag containing a large quantity of white pills. He told Sullivan that "his man" was nearby with an additional quantity of LSD. At this time, pursuant to a prearranged signal, DEA agents moved in and arrested Levine.

Goshorn was arrested while sitting in the Volvo parked on Putnam Street. A search of Goshorn's person produced the keys to the Valiant, which the agents then seized pursuant to 21 U.S.C. § 881(a)(1). Using the keys they had taken from Goshorn, the DEA agents searched the Valiant. During the course of this search they opened the trunk and discovered "[t]wo plastic bags, further in three brown paper bags, further in two clear plastic bags." Within the innermost bags, the agents discovered a quantity of LSD and $950 in U.S. currency. Both the seizure and the search of the Valiant were conducted without a warrant.

In its memorandum and order granting appellee's motion to suppress the fruits of this search, the district court gave special attention to the particular characteristics of the container in which the LSD was discovered, focusing on the capacity of the bags to conceal the contents from the DEA agents. The court concluded that "the paper and plastic bag parcel compares favorably to luggage. . . . [T]he kind of parcel searched here is commonly used as a repository of personal effects." Citing the Supreme Court's decision in *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979), the court held that appellee "had a separate and distinct privacy interest in

the contents of such container" and that the invasion of that interest violated the Fourth Amendment. The court also rejected the government's proffered justification that the search of the bags constituted a valid inventory search, which does not require a judicially authorized warrant. The court concluded, on the basis of the particular circumstances of this case, that by examining the contents of the bags, rather than merely inventorying the outer container as a unit, the government had exceeded the scope of a reasonable inventory search and had thus transgressed the limits of the Fourth Amendment.[1]

The district court relied upon this court's decision in *United States v. Salvucci*, 599 F.2d 1094, 1097–98 (1st Cir. 1979), which in turn followed the rule announced in *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), for the proposition that appellee had "automatic standing" to object to the search of the Valiant and its contents. In our *Salvucci* opinion, we stated the rule as providing that "a defendant has automatic standing to challenge the legality of a search or seizure if charged with a crime that includes, as an essential element of the offense charged, possession of the seized evidence at the time of the contested search and seizure." 599 F.2d at 1097. Because it relied on the automatic standing rule, the district court's resolution of the suppression issue focused on whether "a sufficient expectation of privacy inheres in the parcel searched", not whether *appellee* had a reasonable expectation of privacy in the parcel.

Our review of the district court's decision to suppress must take account first of the Supreme Court's recent decision in *United States v. Salvucci*, —— U.S. ——, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980), which reversed our decision in that case and overruled the automatic standing rule of *Jones*

---

1. The district court did not find and appellee has not asserted that either the warrantless seizure of the Valiant or the warrantless search of the trunk violated the Fourth Amendment.

The only issue before us on appeal, therefore, is whether the government's warrantless search of the parcel found in the trunk was unconstitutional.

*v. United States, supra.*[2] The Court stated that "[t]he person in legal possession of a good seized during an illegal search has not necessarily been subject to a Fourth Amendment deprivation." *Id.* at ——, 100 S.Ct. at 2552 (footnote omitted). The court reiterated, and made clear the generality of, its recent statement in *Rakas v. Illinois,* 439 U.S. 128, 140, 99 S.Ct. 421, 428, 58 L.Ed.2d 387 (1978), that "an illegal search only violates the rights of those who have 'a legitimate expectation of privacy in the invaded place.'" —— U.S. at ——, 100 S.Ct. at 2553; *see United States v. Dall,* 608 F.2d 910, 914 (1st Cir. 1979), *cert. denied,* 445 U.S. 918, 100 S.Ct. 1280, 63 L.Ed.2d 603 (1980). Thus, after the Court's decision in *Salvucci,* a district court may no longer "use possession of a seized good as a substitute for a factual finding" of such a legitimate expectation. 100 S.Ct. at 2553. Instead, in all cases, a criminal defendant seeking suppression bears the burden of proving not only that the search was illegal, but that he had a legitimate expectation of privacy in the thing searched. *Rawlings v. Kentucky,* —— U.S. ——, ——, 100 S.Ct. 2556, 2561 (1980).

■ In some cases, the nature of the container searched permits an inference of expectation of privacy to be drawn once the movant asserts ownership or possession of the container. For example, in *Arkansas v. Sanders, supra,* the Court stated that "luggage is a common repository for one's personal effects, and therefor is inevitably associated with the expectation of privacy." 442 U.S. at 762, 99 S.Ct. at 2592 (citing *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977)). The Court in *Sanders* observed in a footnote, however, that "[n]ot all containers and packages found by police during the course of a search will deserve the full protection of the Fourth Amendment." 442 U.S. at 764 n. 13, 99 S.Ct. at 2593 n. 13. The district court, citing this language from *Sanders,* nevertheless concluded that a paper and plastic bag parcel was entitled to the same heightened protection as a piece of luggage because "such parcels are often used as the primary or sole means of storing and transporting personal and private effects."

■ While we agree with the district court that a paper or plastic bag may be used as a repository of personal possessions, we disagree that the mere possibility of such use leads to the conclusion that such contents are "inevitably" associated with an expectation of privacy. The many and varied uses of these containers that entail no expectation of privacy militate against applying a presumption that a warrantless search of such a container violates the Fourth Amendment. *See United States v. Ross,* No. 79–1624, slip op. at 14–15 (D.C. Cir. April 17, 1980). Moreover, the nature of a paper bag, unlike a piece of luggage, "offer[s] at best only minimal protection against accidental and deliberate intrusions." *Id.* at ——.

■ The determination that should have been made by the district court was whether, under the particular circumstances

**2.** The *Jones* decision was predicated on a dual rationale: (1) the unfairness of requiring a defendant charged with a possessory offense to establish standing by giving self-incriminating evidence that would be admissible at his trial, and (2) the "vice" of allowing the prosecution to allege possession as part of the crime charged, yet deny that the defendant had the requisite possessory interest to establish standing. 362 U.S. at 261–65, 80 S.Ct. at 731–33. The Court found that the first rationale had been obviated by the Court's subsequent decision in *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), which held that "when a defendant testified in support of a motion to suppress evidence on

Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial", *id.* at 394, 88 S.Ct. at 976. With respect to the second rationale, the Court noted its recent statement in *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), that possession or ownership of property subjected to a warrantless search was not sufficient to establish a violation of a defendant's Fourth Amendment rights. In light of *Rakas,* the Court stated, there was no "prosecutorial contradiction" when the government asserted that defendant had a possessory interest in the goods in question, yet had not had any protested interest of his invaded.

of this case, appellee had a reasonable expectation of privacy in the bags found in the trunk of the Valiant. Appellee was required to establish not only that he had a real, subjective expectation of privacy in the bags, but that this expectation, viewed objectively, was reasonable. *See id.* at ——; *United States v. Smith*, 621 F.2d 483, at 487–88 (2d Cir. 1980). The facts in the record do not meet this standard and therefore do not support the district court's suppression order. Appellee had the burden of proving "that *his own* privacy interest was affected." *Rawlings v. Kentucky, supra*, —— U.S. at ——, 100 S.Ct. at 2565 (Blackmun, J., concurring) (emphasis added); *United States v. Salvucci, supra*, —— U.S. at ——, 100 S.Ct. at 2553. Ownership and possession, while not dispositive of expectation of privacy, are relevant factors in this regard. Since appellee was not the registered owner of the Valiant, he was required to establish his personal interest in the parcel by asserting either that he had placed it in the trunk or that he had some possessory interest in the contents of the bags. This he did not do. Furthermore, with respect to the parcel itself, the record is silent on whether the bags were sealed or otherwise secured in such a manner that would support an inference of a reasonable expectation of privacy.

Because appellee relied on the automatic standing rule in effect at the time of his suppression hearing, he did not attempt to establish that he had a legitimate expectation of privacy in the bags searched by the government. We therefore remand the case to the district court to allow appellee the opportunity to prove, if he can, that his Fourth Amendment rights were violated.[3] *See United States v. Salvucci, supra*, —— U.S. ——, 100 S.Ct. at 2553.

*Vacated and remanded.*

---

3. Because we find that appellee failed to establish a reasonable expectation of privacy in the contents of the parcel, we do not reach the question whether the warrantless search of the parcel was justified as a reasonable inventory search.