UNITED STATES of America, Appellee,

v.

Ronald THORNLEY, Defendant, Appellant.

No. 82–1715.

United States Court of Appeals, First Circuit.

Argued March 9, 1983.

Decided May 11, 1983.

---

Richard M. Egbert, Boston, Mass., with whom Joni Seplocha, Cranston, R.I., was on brief, for defendant, appellant.

Robert D. Krause, Asst. U.S. Atty., with whom Lincoln C. Almond, U.S. Atty., Providence, R.I., was on brief, for appellee.

Before COFFIN, Chief Judge, BOWNES, Circuit Judge, and MALETZ,* Senior Judge.

PER CURIAM.

Appellant Ronald Thornley was convicted of selling a stolen motor vehicle in violation of the Dyer Act, 18 U.S.C. § 2313 (1976). From that conviction Thornley raises three issues on appeal: (1) whether documentary evidence introduced at trial was illegally seized; (2) whether the district court erred in denying his motion for judgment of acquittal; and (3) whether the district court erred in failing to grant Thornley's motion for a new trial.

For the reasons that follow, we affirm the judgment of the district court.

---

* Of the United States Court of International Trade, sitting by designation.

## I

Thornley's first contention is that the district court erred in denying his motion to suppress evidence. He argues that certain documents were illegally seized and, accordingly, improperly introduced at his trial. These documents consisted of bank and other business records of Uncommon Auto Parts—a business in which Thornley was the dominant principal. They were the object of a grand jury subpoena duces tecum, but were never produced.

The record of the suppression hearing discloses that Thornley had removed these documents to the basement of a three-story residence located at 13 Columbine Avenue, Pawtucket, Rhode Island, which was owned by a longtime friend, Blair Dalton. Dalton rented the residence to eight persons, but Thornley was not a tenant. The basement consisted of one large area and two smaller partitioned storage areas which were used in common by the tenants to store their belongings.

The testimony at the suppression hearing was that after the third floor tenant vacated her apartment and removed her possessions from her storage area, Mrs. Geraldine LeBlanc, the first floor tenant, began storing some belongings there. The door to this storage area was never locked. In addition, ready access into it could be had through a two-foot by six-foot opening where several slats had fallen off. This opening, through which Mrs. LeBlanc and her children invariably entered, had been there for several years. It was this storage area where Thornley placed the Uncommon Auto business records.

After one of her children discovered bottles of pills in the boxes brought in by Thornley, Mrs. LeBlanc contacted the Pawtucket police department. Upon the officers' arrival Mrs. LeBlanc directed them to the storage area. While looking through the boxes to see if there were more pills, the officers saw the Uncommon Auto records. One of the officers immediately recognized the name on the records, having assisted the FBI in the auto theft investigation which culminated in Thornley's conviction. The records were thereupon seized by the officers. It is this seizure of which Thornley complains.

 Whether the Fourth Amendment's prohibition against unreasonable searches and seizures has been violated depends on whether the person asserting a Fourth Amendment violation had a reasonable expectation of privacy in the place searched or the thing seized. *United States v. Hershenow,* 680 F.2d 847, 855 (1st Cir.1982). Given the facts here the basic question is whether Thornley had a reasonable expectation of privacy in the partitioned storage area. In *Smith v. Maryland,* 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979), the Supreme Court set forth a two-step test for determining whether a reasonable expectation of privacy exists: whether the individual has exhibited a subjective expectation; and whether such subjective expectation, viewed objectively, is justifiable under the circumstances. *Id.* at 740, 99 S.Ct. at 2580. The burden is on the defendant to satisfy these two tests. *United States v. Goshorn,* 628 F.2d 697, 700 (1st Cir.1980).

 Thornley meets the subjective expectation test. His purpose in taking the records to 13 Columbine Avenue was to hide them and their incriminating contents after the grand jury subpoena issued. However, a legitimate expectation of privacy means more than a subjective expectation of keeping incriminating evidence hidden. *United States v. Hershenow,* 680 F.2d at 855; *United States v. Goshorn,* 628 F.2d at 701. *See Rakas v. Illinois,* 439 U.S. 128, 143–44 n. 12, 99 S.Ct. 421, 430–31 n. 12, 58 L.Ed.2d 387 (1978).

 We thus consider whether Thornley's subjective expectation, viewed objectively, is justifiable under the circumstances. The following factors weigh against an objective expectation of privacy. The door to the storage area was not kept locked. Ready access could be had to that area through a hole in the partition which had been there for several years. The storage area was being used by Mrs. LeBlanc before Thornley began using it. She was never

told, either before or after Thornley began using that area, that such use was prohibited. Access to the basement was not restricted to any of the tenants. In fact, it was regularly used by the LeBlanc children as a play area. There was no credible evidence that Thornley had a lease for the storage area. Moreover, it is uncontroverted that he was not a tenant at the residence.

The sole countervailing factor is found in the testimony of Blair Dalton, who testified that he had leased the storage area to Thornley for his exclusive use. The district court completely discounted Dalton's testimony, rejecting it as "not worthy of belief." Credibility resolutions of a fact finder are to be disturbed only in exceptional cases. *NLRB v. Massachusetts Machine & Stamping, Inc.,* 578 F.2d 15, 20 (1st Cir.1978). Except as to evidence which is inherently incredible, we cannot substitute our judgment for that of the trial court in its exercise of credibility choices. *Marcum v. United States,* 452 F.2d 36, 39 (5th Cir.1971). On the basis of the record before us, we reject Thornley's invitation to do so here.

Based on these facts we find that there was no objective, justifiable expectation of privacy in the storage area. "One cannot insulate himself against the discovery of incriminating material by removing it from his own premises, ... and hiding it in a place ... in which one has no legal interest or even access rights." *Hershenow,* 680 F.2d at 856. It follows that there was no error in denying Thornley's motion to suppress.

## II

■ Thornley next argues that the district court erred in denying his motion for judgment of acquittal. Review of a district court's denial of such a motion is, of course, very limited. We must affirm that decision "unless the evidence, viewed in the light most favorable to the government, could not have persuaded any rational trier of fact that [defendant] was guilty beyond a reasonable doubt." *United States v. Cincotta,* 689 F.2d 238, 241 (1st Cir.), *cert.*

*denied,* —— U.S. ——, 103 S.Ct. 347, 74 L.Ed.2d 387 (1982).

■ The thrust of Thornley's argument is that the Government's proof was circumstantial and insufficient to support his conviction. However, the Government's case may be entirely supported by circumstantial evidence. *United States v. Sullivan,* 498 F.2d 146, 150–51 (1st Cir.), *cert. denied,* 419 U.S. 993, 95 S.Ct. 303, 42 L.Ed.2d 265 (1974). If the Government proves its case by circumstantial evidence, "it need not exclude every reasonable hypothesis of innocence so long as the total evidence permits a conclusion of guilt beyond a reasonable doubt." *United States v. Gabriner,* 571 F.2d 48, 50 (1st Cir.1978). The trier of fact is free to choose among various reasonable constructions of the evidence. *Id.*

■ In a Dyer Act prosecution the Government must show (1) that the vehicle was stolen, (2) that the defendant sold it knowing that it was stolen, and (3) that the vehicle was moving as or was a part of interstate commerce at the time it was sold. *United States v. Browning,* 439 F.2d 813, 815 (1st Cir.1971). There is sufficient evidence in the record to support an affirmative finding on each of these elements.

■ First, there is ample evidence to show that the vehicle was stolen. The vehicle sold by Thornley shared several common characteristics with the stolen vehicle. They were the same make, year, model, color and body style. Moreover, the vehicle which Thornley sold bore a vehicle identification number that was not original to it, and its engine number had been altered. Also, the license plate of the stolen vehicle was found in a car leaving the Uncommon Auto premises bearing an Uncommon Auto transportation plate. On the basis of this evidence a reasonable inference could be drawn that the stolen vehicle and the vehicle which was sold by Thornley were the same. *See United States v. Sullivan,* 498 F.2d at 150–51.

■ Next, Thornley argues that there is insufficient proof that he had knowledge that the vehicle was stolen. The evidence is

to the contrary. The record shows that Thornley was the dominant principal of Uncommon Auto Parts on whose behalf Thornley personally sold the stolen vehicle. The record further reflects that shortly before this sale Thornley had purchased a wrecked automobile for $1,600 which was identical in year, model, make, color and body style to the stolen vehicle. The stolen vehicle which was sold for $5,250 bore both the same vehicle identification number and engine number as the wreck, neither of which was original to the stolen vehicle. A rational trier of fact could have justifiably concluded that Thornley purchased the wrecked vehicle in order to salvage and transfer to the stolen vehicle the wreck's vehicle identification and engine numbers. When considered with the other evidence, a reasonable inference could be drawn that Thornley had knowledge that the vehicle was stolen. *United States v. Wood,* 500 F.2d 681, 683 (5th Cir.1974); *United States v. Folsom,* 479 F.2d 1 (8th Cir.1973).

Thornley's last contention is that there is insufficient evidence to establish the interstate commerce element. He argues that the stolen vehicle had ceased to move in interstate commerce at the time it was sold, thereby destroying the interstate commerce nexus. This contention is easily disposed of for, as this court noted in *United States v. Browning:*

> [Although] [t]he discrepancy in dates makes it impossible to say how much time actually elapsed between the theft and the receipt of the car by the purchaser .... the jury could reasonably find that defendant was the final link in an interstate chain having as its purpose the sale in [one state] of cars stolen in [another]. Regardless of the time element between the theft and the sale, the characteristic of interstate commerce was preserved ....

*Id.* at 815–16. The record here discloses a well-coordinated salvage/switch operation orchestrated by Thornley of which the stolen vehicle was a part. There is "ample evidence upon which the jury could have concluded that the interstate odyssey continued without significant interruption until the moment of sale." *Powell v. United States,* 410 F.2d 710, 714 (5th Cir.1969).

### III

Thornley's final ground for appeal is that the district court erred in denying his motion for a new trial. A motion for a new trial is directed to the sound discretion of the trial court. Denial of such a motion will not be reversed, absent a miscarriage of justice or unless the evidence heavily preponderates against the verdict. *United States v. Leach,* 427 F.2d 1107, 1111 (1st Cir.), *cert. denied,* 400 U.S. 829, 91 S.Ct. 95, 27 L.Ed.2d 59 (1970). Our earlier discussion shows that ample evidence existed to support Thornley's conviction. Thornley also argues that the jury misunderstood the district court's instructions. But as to jury confusion, other than Thornley's bare assertion that such confusion existed, there is nothing in the record showing such confusion or any other element of unfairness warranting a reversal of the district court's denial of his motion for a new trial.

### IV

For all the foregoing reasons, the judgment of the district court is affirmed.