UNITED STATES of America, Appellee,

v.

James McHUGH, Defendant, Appellant.

No. 84–1748.

United States Court of Appeals,
First Circuit.

Heard March 6, 1985.
Decided Aug. 8, 1985.

James Michael Merberg, Boston, Mass., with whom Daniel Patrick Leonard, Boston, Mass., was on brief, for defendant, appellant.

James E. O'Neil, Providence, R.I., with whom Lincoln C. Almond, U.S. Atty., Providence, R.I., was on brief, for appellee.

Before COFFIN and TORRUELLA, Circuit Judges, and RE,* Judge.

* The Honorable Edward D. Re, Chief Judge, United States Court of International Trade, sitting by

RE, Chief Judge:

Appellant, James McHugh, appeals from a judgment of conviction entered against him on March 27, 1984, following a jury trial in the United States District Court for the District of Rhode Island. Appellant was convicted of possession of marijuana with intent to distribute, in violation of section 2 of Title 18, United States Code and section 401 of the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 841 (1982). Appellant was also convicted of conspiracy to distribute marijuana, in violation of section 406 of the Act. On September 7, 1984, appellant was sentenced to a five-year term of imprisonment and fined $15,000 on the conspiracy count of the indictment. On the possession count of the indictment, appellant received five years probation and a special parole term of four years.

The appellant contends that the district court, 575 F.Supp. 111 (D.C.R.I.1983), erred in denying his pre-trial motion to suppress evidence that he alleges was illegally obtained. In addition, appellant contends that the trial judge improperly denied his motion for judgment of acquittal.

Since we find the contentions of the appellant without merit, we affirm the judgment of conviction, the denial of motion for judgment of acquittal, as well as the imposition of the prison sentence, probation, fine, and special parole term ordered by the district court.

### The Facts

During July of 1983, a waterfront residence, known as the Malone Camp, located along the Sakonnet River in Portsmouth, Rhode Island, was the target of investigative surveillance by the Rhode Island Drug Task Force, a joint task force comprised of Federal, state, and local law enforcement officers. On July 15, 1983, the members of the Task Force engaged in active surveillance of the Malone Camp included deputy United States Marshal, Joseph Thomas,

designation.

and Inspector Norman Phelps, who was employed by the state division of drug control. They were accompanied by Officer Coffey, a member of the Little Compton, Rhode Island, Police Department. The officers were aided in their duties by use of binoculars, telescopes, and a nightscope.

All three officers were conducting their surveillance from the shore opposite Portsmouth, in Tiverton, Rhode Island. Sometime after 8:45 p.m., Inspector Phelps went to the Portsmouth side of the river and stationed himself on Water Street, where he could observe the driveway entrance to the camp. From his position, Phelps could observe a jeep parked in the driveway of the camp, which effectively blocked its entrance. Between 10:30 p.m. and 11:00 p.m., Thomas radioed to Phelps that he saw lights on the river going to and coming from the camp, and also that he heard high-powered boats operating on the river.

Shortly after 11:00 p.m., Phelps saw a grey General Motors Corporation (GMC) pickup truck with its lights out come up the drive from the camp to Water Street. The truck came to a stop behind the jeep that was blocking the driveway. The bed of the truck was covered with a camper shell or "cap," the windows of which were covered with cardboard. Phelps observed appellant McHugh move the jeep so as to permit the truck to proceed onto Water Street. As the truck left the driveway, it rocked from side to side on the rough road, and the rear window of the camper cap popped open. Phelps was then able to observe burlap bales stacked in the bed of the pickup truck. As the truck paused, appellant stopped the jeep, got out, and secured the opening on the truck. The jeep driven by appellant then followed the truck, which was driven by Alfred Craven, toward the highway and out onto Route 138. Phelps followed both vehicles.

Approximately a mile later, the jeep stopped following the truck and headed back towards the waterfront. Phelps followed the truck into Massachusetts, where he enlisted the help of a Massachusetts state trooper. The trooper, at Phelp's behest, stopped the truck and arrested the driver. Approaching the truck, Phelps detected the smell of marijuana. He then opened the rear hatch of the truck and observed the bales. The pickup truck was then towed to a nearby Massachusetts State Police barracks. On July 22, approximately seven days later, the bales were opened. No warrant was obtained for the search of the truck, or the subsequent opening of the bales. The bales proved to contain a large quantity of marijuana, samples of which were introduced at the trial. After a four day jury trial, the appellant was convicted on both counts.

Two questions are presented on this appeal: (1) whether the district court improperly denied appellant's motion to suppress evidence seized as the result of the warrantless search of the pickup truck; and (2) whether the trial court improperly denied appellant's motion for judgment of acquittal.

We hold that the appellant lacked a reasonable expectation of privacy in the GMC pickup truck, and therefore lacked standing to contest the search. Alternatively, we hold that neither the initial seizure of the truck, nor the subsequent search of its contents was violative of the fourth amendment. Since we also hold that the trial court properly denied appellant's motion for judgment of acquittal, we affirm.

I. Fourth Amendment Challenges

Appellant McHugh appeals the denial of his pre-trial motion to suppress evidence. On November 8, 1983, after a hearing, the district court denied the appellant's motion. 575 F.Supp. 111, 119 (D.R.I.1983). The denial was based upon the district court's finding that appellant lacked standing to contest the search, and, alternatively, that the seizure and search of the pickup truck were constitutionally permissible. *Id.* at 115–16. On appeal, unless they are clearly erroneous, we must affirm the pretrial determinations of the district court. *United States v. Regan,* 687 F.2d 531, 535 (1st Cir.1982); *United States v. Jobin,* 535 F.2d 154, 156 (1st Cir.1976).

## Appellant's Standing to Contest the Search

 There is no automatic standing to contest the legality of a search and seizure for a defendant charged with a crime of possession. *United States v. Salvucci,* 448 U.S. 83, 95, 100 S.Ct. 2547, 2554, 65 L.Ed.2d 619 (1980). A defendant must show that his own constitutional rights have been infringed; vicarious assertion of another's constitutional rights is insufficient. *See Rakas v. Illinois,* 439 U.S. 128, 134, 99 S.Ct. 421, 425, 58 L.Ed.2d 387 (1978). The initial inquiry, therefore, is whether the defendant had a legitimate expectation of privacy in the area searched or the article seized. *Rakas, supra,* 439 U.S. at 140–49, 99 S.Ct. at 428–33; *United States v. Lochan,* 674 F.2d 960, 963–64 (1st Cir.1982).

 The Supreme Court has enunciated a two-step process to determine whether the defendant possessed a legitimate expectation of privacy. *Smith v. Maryland,* 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979). First, a court must ascertain whether the defendant had a subjective expectation of privacy. Second, it must determine whether the defendant's subjective expectation, viewed objectively, was reasonable. *Smith,* 442 U.S. at 740, 99 S.Ct. at 2580 (citing *Katz v. United States,* 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring)); *see also United States v. Hershenow,* 680 F.2d 847, 855 (1st Cir.1982). Hence, the burden is on the defendant to establish not only that he had a subjective expectation, but also that this expectation was objectively reasonable. *United States v. Thornley,* 707 F.2d 622, 624 (1st Cir. 1983); *United States v. Goshorn,* 628 F.2d 697, 700 (1st Cir.1980).

Appellant McHugh contends that he had a reasonable expectation of privacy in the GMC pickup truck driven by Craven. Appellant cites the following facts in support of this contention. He was seen driving the truck on several occasions. He also was seen securing the cap to the bed of the pickup truck, and accompanied the truck on part of its journey. The fact that the win-

dows of the truck were covered, he argues, also supports his reasonable expectation of privacy. Finally, McHugh contends that there is sufficient evidence for this Court to infer that he partially owned the bales, and that Craven was a bailee.

 Although McHugh may have had a subjective expectation of privacy, these facts, at most, show that he intended to hide the bales. For fourth amendment purposes, however, "a legitimate expectation of privacy means more than a subjective expectation of keeping incriminating evidence hidden." *United States v. Thornley,* 707 F.2d 622, 624 (1st Cir.1983).

 Assuming that McHugh had a subjective expectation of privacy, viewed objectively, this expectation must also be reasonable under the circumstances. This court has held that "[o]wnership and possession, while not dispositive of expectation of privacy, are relevant factors in this regard." *United States v. Goshorn,* 628 F.2d 697, 701 (1st Cir.1980). *See Salvucci, supra,* 448 U.S. at 91, 100 S.Ct. at 2552.

 The truck was neither registered nor owned by McHugh. A registration check made three or four days before the seizure revealed that the truck was registered by a Paul Richter to Paul's Building Company. McHugh's brother Lawrence was observed driving the truck on occasion. At the time the truck was seized, Craven was in sole possession and control of the truck and its contents. The district court found no evidence that appellant had any legal right to exclude others from the truck's possession or use. We agree that these facts, taken together, do not establish the type of possessory interest in the pickup truck sufficient to establish a legitimate expectation of privacy necessary for standing to challenge the admissibility of the marijuana seized.

## Warrantless Search of the GMC Pickup Truck

 Since the record reveals that there was probable cause to conduct the search and seizure, even if the appellant had

standing to challenge the search, the evidence was properly admitted. *See United States v. Ross,* 456 U.S. 798, 823–24, 102 S.Ct. 2157, 2172–73, 72 L.Ed.2d 572 (1982).

Inspector Phelps had been advised that high-speed boats had been operating around the Malone Camp. The windows of the camper-type cap were conspicuously covered to conceal the contents of the bed. Most significantly, Phelps saw the burlap bales when the vehicle left the camp. From his 13 years experience as a narcotics inspector, he knew that marijuana was often packaged in this manner. All of these facts and events indicate that there was reasonable suspicion of drug trafficking.

In assessing the import of the evidence, the expertise and experience of the law enforcement officers must also be taken into account. *United States v. Regan,* 687 F.2d 531, 536 (1st Cir.1982); *United States v. Viegas,* 639 F.2d 42, 45 (1st Cir.), *cert. denied,* 451 U.S. 970, 101 S.Ct. 2046, 68 L.Ed.2d 348 (1981). Police officers, having a reasonable and articulable suspicion that a person is engaged in illegal activity, may conduct a brief stop of an automobile to investigate. *See United States v. Sharpe,* — U.S. —, 105 S.Ct. 1568, 1573–75, 84 L.Ed.2d 605 (1985); *United States v. Cortez,* 449 U.S. 411, 417–18, 101 S.Ct. 690, 694–95, 66 L.Ed.2d 621 (1981); *Reid v. Georgia,* 448 U.S. 438, 440, 100 S.Ct. 2752, 2753, 65 L.Ed.2d 890 (1980) (*per curiam*). As Phelps approached the truck, he smelled marijuana emanating from the vehicle. Looking through the back window of the cab behind the driver's seat, which was not covered with cardboard, Phelps could see the bales stacked in the rear compartment. We hold that the facts known to Phelps, and the circumstances surrounding the stopping of the pickup truck driven by Craven, constituted probable cause to search the vehicle. *See United States v. Johns,* — U.S. —, 105 S.Ct. 881, 884, 83 L.Ed.2d 890 (1985); *Carroll v. United States,* 267 U.S. 132, 149, 162, 45 S.Ct. 280, 283, 288, 69 L.Ed. 543 (1925).

Once probable cause existed to believe that contraband was being concealed and illegally transported in the pickup truck, the search could properly have been conducted without a warrant. *United States v. Johns,* — U.S. —, 105 S.Ct. 881, 887, 83 L.Ed.2d 890 (1985); *Michigan v. Thomas,* 458 U.S. 259, 261, 102 S.Ct. 3079, 3080, 73 L.Ed.2d 750 (1982) (per curiam); *Carroll v. United States,* 267 U.S. 132, 153, 45 S.Ct. 280, 285, 69 L.Ed. 543 (1925). Furthermore, the lawful search of a vehicle is not restricted temporally. The Supreme Court has held that there is no requirement that the warrantless search of a vehicle occur contemporaneously with its lawful seizure. *Texas v. White,* 423 U.S. 67, 68, 96 S.Ct. 304, 305, 46 L.Ed.2d 209 (1975) (*per curiam*); *Chambers v. Maroney,* 399 U.S. 42, 52, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970). Indeed, in *Michigan v. Thomas,* 458 U.S. 259, 102 S.Ct. 3079, 73 L.Ed.2d 750 (1982) (*per curiam*), the Court stated that "the justification to conduct a warrantless search does not vanish once the car has been immobilized." *Id.* at 261, 102 S.Ct. at 3080.

The scope of a warrantless search of a motor vehicle based on probable cause is no broader or narrower than if it were authorized by a warrant supported by probable cause. *United States v. Ross,* 456 U.S. 798, 823, 825, 102 S.Ct. 2157, 2172, 2173, 72 L.Ed.2d 572 (1982). The Court in *Ross* stated: "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *Id.* at 825, 102 S.Ct. at 2173. Thus, *Ross* establishes that the contents of the pickup truck and any packages, bales, or containers within it could have been searched when the truck driven by Craven was initially stopped.

Nevertheless, appellant contends that the warrantless search violates the fourth amendment because it was conducted seven days after the seizure of the pickup truck. We find this contention to be without merit.

The Supreme Court has recently had occasion to consider whether a delay between the lawful seizure of a vehicle and the subsequent search of its contents violates the fourth amendment. In *United States v. Johns*, ——— U.S. ———, 105 S.Ct. 881, 83 L.Ed.2d 890 (1985), customs officers surveilled the defendant's residence pursuant to an investigation of a suspected drug smuggling operation. *Id.* at ———, 105 S.Ct. at 883. The officers observed two pickup trucks travel to a remote airstrip and approach a small aircraft. After the first aircraft departed, another landed and also departed. The officers approached the truck and ordered the individuals to lie on the ground after one of them was observed attempting to conceal the contents of one of the trucks. As the officers drew closer, they smelled marijuana. They looked into the back of the trucks and saw packages wrapped in green plastic and sealed with tape. Marijuana, the officers knew, was often packaged in this manner. The individuals were arrested, but the pickup trucks were not searched. *Id.* at ———, 105 S.Ct. at 884. The trucks were taken back to the Drug Enforcement Agency headquarters nearly 100 miles away where the packages were opened some three days later. *Id.* Samples taken from the packages proved to be marijuana.

The Supreme Court found that the officers had probable cause to search and seize the vehicles. *Id.* at ———, 105 S.Ct. at 884. The Court also found that the delay after the initial seizure did not render the search unreasonable. *Id.* at ———, 105 S.Ct. at 887. The *Johns* Court held that a warrantless search is not unreasonable merely because of a delay in searching packages seized pursuant to a lawful arrest. The Court found that *Ross* does "not suggest that searches of containers discovered in the course of a vehicle search are subject to temporal restrictions not applicable to the vehicle search itself." *Id.* at ———, 105 S.Ct. at 886. The Court noted that:

> [I]n this case there was probable cause to believe that the trucks contained contraband and there is no plausible argument that the object of the search could not

have been concealed in the packages. Respondents do not challenge the legitimacy of the seizure of the trucks or the packages, and they never sought return of the property. Thus, respondents have not even alleged, much less proved, that the delay in the search of packages adversely affected legitimate interests protected by the Fourth Amendment.

*Id.* at ———, 105 S.Ct. at 887. The Court concluded that a warrantless search of the closed container three days after a lawful seizure of a vehicle was reasonable. *Id.*

The holding and reasoning in *Johns* is dispositive of McHugh's contention that the delay in the search of the bales was violative of the fourth amendment. The facts and issue of this case are virtually identical to those in *Johns*. Although in *Johns* the search was conducted three days after the lawful seizure, in contrast to the approximately seven day hiatus in this case, we find this distinction to be insignificant. No chain of custody issue has been raised, and the appellant has not shown that any prejudice to him resulted from the delay. As the Court pointed out in *Johns,* imposing an arbitrary temporal restriction on the search of containers discovered in a vehicle search would simply encourage police officers to search all containers immediately upon seizure of the vehicle. This result would not further the privacy interests protected by the fourth amendment. *Id.* at ———, 105 S.Ct. at 887. *See Cooper v. California*, 386 U.S. 58, 61–62, 87 S.Ct. 788, 790–91, 17 L.Ed.2d 730 (1967).

In *Cooper v. California*, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967), the police impounded the defendant's vehicle pursuant to a state forfeiture statute, after his arrest on narcotics charges. The statute required that the vehicle be held as evidence until a forfeiture or release was ordered. Searching the car approximately a week after seizure, the police found additional evidence against the defendant. The Court held that the warrantless search was reasonable within the scope of the fourth amendment. 386 U.S. at 61–62, 87 S.Ct. at 790–91. Accordingly, we hold that the

search of the bales seven days after the seizure of the GMC truck and bales was reasonable and did not violate appellant's fourth amendment rights.

## II. Appellant's Motion for Judgment of Acquittal

Appellant McHugh contends that the government failed to prove that the marijuana seized was in an amount in excess of 1,000 pounds, and, therefore, the trial court improperly denied his motion for judgment of acquittal. We find this contention to be meritless.

Essentially, appellant's argument is that the government failed to prove that the bales seized from the GMC truck were comprised entirely of statutorily proscribed marijuana. The bales, appellant theorizes, could have contained mature stalks or sterilized seeds of the marijuana plant, which are excluded from the definition of marijuana under the Comprehensive Drug Abuse Prevention and Control Act of 1970. 21 U.S.C. § 802(15). Under the Act, the term marijuana is defined as "all parts of the plant Cannabis sativa L.," but does not include the "mature stalks of such plant ... or the sterilized seed of such plant which is incapable of germination." *Id.*

Appellant McHugh was indicted and convicted of conspiring to possess and of possessing approximately 1,379 pounds, 9 ounces of marijuana in violation of sections 846, 841(a) and 841(b)(6) of Title 21 of the United States Code. Section 841(b)(6) provides for a maximum sentence of not more than fifteen years imprisonment and a fine not to exceed $125,000, if the quantity of marijuana exceeds 1,000 pounds. 21 U.S.C. § 841(b)(6) (1982). If the amount of marijuana is less than 1,000 pounds, the penalty may not exceed five years in prison and a fine may not exceed $15,000. 21 U.S.C. § 841(b)(1)(B). Section 846 provides that the penalty for conspiracy shall not exceed the penalty for the substantive offense which was the object of the conspiracy. 21 U.S.C. § 846 (1982).

Appellant McHugh argues that since some of the bales seized may have contained mature stalks or sterilized seeds, which could not be classified as marijuana under 21 U.S.C. § 802(15), it is possible that the total weight of prohibited marijuana in the bales would be less than 1,000 pounds. Although no cases are cited in support of this theory, he contends that this possibility renders the decision defective because the weight of the marijuana is an essential element of the crime charged. We find this argument to be without merit.

It is well established that our review of a trial court's denial of a motion for judgment of acquittal is limited. *See, e.g., United States v. Espinal,* 757 F.2d 423, 426 (1st Cir.1985); *United States v. Thornley,* 707 F.2d 622, 625 (1st Cir.1983); *United States v. Cincotta,* 689 F.2d 238, 241 (1st Cir.), *cert. denied,* 459 U.S. 991, 103 S.Ct. 347, 74 L.Ed.2d 387 (1982). We must affirm the denial if we determine that a rational trier of fact, drawing reasonable inferences from the evidence viewed in the light most favorable to the government, could have been persuaded that the defendant was guilty beyond a reasonable doubt. *See United States v. Lamare,* 711 F.2d 3, 5 (1st Cir.1983). "The prosecution may prove its case by circumstantial evidence, and it need not exclude every reasonable hypothesis of innocence so long as the total evidence permits a conclusion of guilt beyond a reasonable doubt." *United States v. Gabriner,* 571 F.2d 48, 50 (1st Cir.1978). *See Thornley, supra,* 707 F.2d at 625. "The trier of fact is free to choose among various reasonable constructions of the evidence." *Thornley, supra,* 707 F.2d at 625. *See Gabriner, supra,* 571 F.2d at 50; *United States v. Klein,* 522 F.2d 296, 302 (1st Cir.1975).

In this case the jury viewed three of the thirty-two burlap bales of marijuana seized from the GMC truck. The defendant stipulated that the other twenty-nine would appear similar to those introduced in evidence. Samples from each of the thirty-two bales were introduced into evidence. From these samples, the jury could have inferred beyond a reasonable doubt that less than one quarter of the total amount of marijuana seized consisted of mature

868

stalks and sterilized seeds. From the evidence, the jury may well have found beyond a reasonable doubt that no significant number of seeds were sterilized. As the district court pointed out, the statute does not exclude all stalks, but only "mature" stalks. It should also be noted that the marijuana was available for the defense to analyze if it wished to refute the compelling inference that the statutorily proscribed marijuana exceeded 1,000 pounds. We have concluded that the jury could have found beyond a reasonable doubt that mature stalks and seeds amounted to less than three hundred and seventy-nine pounds of the marijuana seized.

 Since proving the amount of marijuana is an essential element of the offense only under 21 U.S.C. § 841(b)(6), even if there were a basis for reasonable doubt that the marijuana weighed more than 1,000 pounds, this could not affect the appellant's conviction under 21 U.S.C. §§ 841(a)(1) and 846. Appellant was indicted under 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1), 841(b)(6), and 846. Section 841(a)(1) makes it unlawful, *inter alia,* to possess with intent to distribute a controlled substance. Section 846 makes it unlawful to conspire or attempt to commit an offense under 841(a). Neither section 841(a) nor section 846 requires any specific quantity for conviction. *See United States v. Estell,* 539 F.2d 697, 699 (10th Cir.), *cert denied,* 429 U.S. 982, 97 S.Ct. 497, 50 L.Ed.2d 592 (1976); *United States v. Sims,* 529 F.2d 10, 11 (8th Cir.1976). Section 841(b) specifies the penalties for violations of section 841(a), depending on the substance and quantity involved, and the defendant's prior convictions. Subsection (6) of 841(b) is an enhanced penalty provision for offenses in which the quantity of marijuana exceeds 1,000 pounds. 21 U.S.C. § 841(b)(6) (1982). *See generally United States v. Webster,* 750 F.2d 307, 331–32 (5th Cir.1984).

The sentence imposed on McHugh, however, did not comport with the enhanced penalty provision of 21 U.S.C. § 841(b)(6). Instead, appellant received a sentence that

was within the more lenient standard of 21 U.S.C. § 841(b)(1)(B), for which no specific quantity is required. Since the sentence was not in excess of the maximum prescribed by § 841(b)(1)(B), it is not necessary that the quantity of marijuana exceed 1,000 pounds. The appellant's conviction and sentence are, therefore, valid.

### Conclusion

In view of the foregoing, it is the holding of this Court that the seizure of the pickup truck and the subsequent search of the bales were reasonable, and did not violate appellant's fourth amendment rights. Furthermore, we hold that the district court properly denied appellant's motion for judgment of acquittal. Finding no error in the judgment of conviction, we affirm.