<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                 UNITED STATES COURT OF APPEALS
                     FOR THE FIRST CIRCUIT
                      ____________________

Nos. 96-2091
   97-1720

                         UNITED STATES,

                           Appellee,

                               v.

                        MICHAEL HAWKINS,

                     Defendant, Appellant.

                      ____________________

         APPEALS FROM THE UNITED STATES DISTRICT COURT

               FOR THE DISTRICT OF MASSACHUSETTS

          [Hon. William G. Young, U.S. District Judge]

                      ____________________

                             Before

                    Torruella, Chief Judge,

               Boudin and Lynch, Circuit Judges.

                     _____________________

   Bernard Grossberg, by appointment of the Court, for appellant.
   Christopher F. Bator, Assistant United States Attorney, with
whom Donald K. Stern, United States Attorney, was on brief for
appellee.

                      ____________________

                        March 18, 1998
                     ____________________

         TORRUELLA, Chief Judge.  On January 12, 1995, the Melrose,
Massachusetts Police Department received a telephone call
regarding the fraudulent purchase of video tapes from a store in
Clearwater, Florida. An extensive investigation ensued, producing
sufficient evidence to allow the authorities to seek and obtain a
search warrant of Appellant's business and residence.  The
warrant included a "no-knock" provision for the search of
Appellant's apartment.
         This provision was requested after police discovered that
Appellant had an extensive criminal record involving acts of
violence.  These included convictions for armed robbery, armed
robbery while masked, assault with a dangerous weapon, threats,
assault and battery, possession of a dangerous weapon, using a
firearm with intent to commit a crime, assault with a dangerous
weapon, and a firearms violation (possession of a shotgun).  
Furthermore, the investigating police officer also had recently
learned that Appellant had threatened a neighbor with a gun.  
Thus, believing that Appellant was armed and dangerous, and that
the investigation by the police may have alerted him to the
situation that was developing, the state sought, and a state
judge granted, a "no-knock" warrant for the apartment in
question.  
         On January 20, 1995 the police executed the warrant on
Appellant's apartment seeking to obtain evidence of the
fraudulent purchase of the videotapes.  The door was broken down
with a sledge hammer, the officers entered with drawn weapons,
and Appellant was ordered to the ground with a gun held to his
head.  The search produced several items, including several of
the tapes sought, but more relevant to this appeal, the executing
officers found one box of Winchester .22 caliber hollow-point
cartridges, as well as a .22 caliber rifle cleaning kit.  Small
amounts of illegal controlled substances, and stolen computer
equipment were also discovered.
         One of the officers also discovered a ring of keys on the kitchen
countertop.  A resident of the apartment building indicated that
there were storage compartments assigned to each apartment in the
common basement of the building, whereupon the search party
proceeded to that area.  There they found twelve open storage
areas, enclosed within a framing covered with chicken wire, the
interiors of which were visible from outside the enclosures.  All
but two of the enclosures were marked with numbers corresponding
to apartment numbers located in the building.
         Apartment 5, Appellant's premises, was one of the two numbers
that was not marked on any locker.  Upon testing by a police
officer of several of the keys recovered from Appellant's
apartment on the locks of the two unnumbered storage spaces, he
was able to unlock one of the locks.  The officers did not
proceed further and again locked the premise in question.  They
were able to observe through the chicken wire, however, several
boxes located inside.
          With this information, the police sought and received an
additional warrant to search the storage area that was assigned
to Appellant's apartment.  Upon execution of this warrant, the
police discovered the firearms enumerated in Count One of the
indictment, namely, a Colt .45 caliber semi-automatic pistol, a
Colt .357 caliber magnum revolver, a Charter Arms .22 caliber
rifle, and an Astra .22 caliber semi-automatic pistol with an
obliterated serial number.
         The fruits of this investigation were turned over to the federal
authorities, whereupon Appellant was charged in a two count
indictment alleging violations of 18 U.S.C.  922(g)(1), because
he was a convicted felon in possession of firearms and of
ammunition. Appellant sought to suppress the evidence obtained
from his apartment, including the keys, as well as the items
seized from his storage compartment in the basement of the
apartment house. The motion was denied by the district court and
thereafter Appellant entered a conditional guilty plea. After
being sentenced by the district court to a term of 180 months'
incarceration and five years' supervised release, Appellant
sought to withdraw his plea. This request was denied by the
district court and this appeal followed.
         Three errors are claimed on appeal: (1) the failure to grant the
suppression of the evidence seized at Appellant's apartment and
locker, (2) the denial of the motion to withdraw the conditional
guilty plea, and (3) the inclusion of state charges for
conspiracy to commit a violent felony and possession of a firearm
during the commission of a felony as convictions under 18 U.S.C.
924(e) and Section 4B1.4 of the Sentencing Guidelines.  Finding
that the district court committed no error in its rulings, we
affirm Appellant's conviction.
I.  The Motion to Suppress
         Appellant challenges the district court's finding that the "no-
knock" provisions of the search warrant to his apartment were
lawful, and questions the court's validation of the police entry
into the basement area and the discovery of the evidence located
there.
           A.  "No-Knock" Warrants
          Although there is a presumption in favor of announcement, i.e.,
knocking or some similar gesture, this postulate "yield[s] under
circumstances presenting a threat of physical violence."  Wilsonv. Arkansas, 514 U.S. 927, 936 (1995). The burden that must be
met by the police to validate a "no-knock" entry "is not high."  
Richards v. Wisconsin, ___ U.S. ___, ___, 117 S. Ct. 1416, 1422
(1997).  "Under Richards, a no-knock entry is justified if police
have a 'reasonable suspicion' that knocking and announcing would
be dangerous . . . to the purposes of the investigation."  United
States v. Ramrez, ___ U.S. ___, ___, 1998 WL 88055, at *3 (U.S.
March 4, 1998).  In this case, Appellant's copious record of
violent convictions, coupled with the attesting police officer's
personal knowledge of a recent armed action by him, and the
officer's suspicion that Hawkins was aware of the police interest
in him more than sufficiently justified a "reasonable suspicion"
that knocking and announcing their presence would be dangerous to
the officers executing the search warrant.
         Furthermore, this was not a spur of the moment decision by the
executing officers.  The matter was submitted to the judgment of
a judicial officer who passed upon facts submitted, the existence
of which has not been questioned. Under these circumstances the
executing officers were clearly entitled to rely on the validity
of the warrant.  See United States v. Leon, 468 U.S. 897 (1984).
         Thus the evidence discovered in the apartment, including the
ammunition and the basement locker keys, was legally obtained and
could have been used by the government against Appellant at
trial, had one taken place.
              B.  The Basement
         It is now beyond cavil in this circuit that a tenant lacks a
reasonable expectation of privacy in the common areas of an
apartment building.  See United States v. Cruz Pagn, 537 F.2d
554, 557-58 (1st Cir. 1976). The unenclosed areas of the basement
of this apartment building were such common areas.  See id.  
Appellant thus had no reasonable expectation of privacy in the
basement common area.  See United States v. Thornley, 707 F.2d
622, 625 (1st Cir. 1983).
         Once legally inside this area, the police had a right to perceive
whatever was available to them through the use of their senses,
including their common sense. Cf. Carroll v. United States, 267
U.S. 132, 162 (1925) (probable cause is a flexible "common sense"
standard).  This exercise revealed, (1) that all the lockers were
numbered, except two; (2) that one of the two numbers missing
corresponded to Appellant's apartment number; (3) that the keys
legally obtained in Appellant's apartment fitted one of the
unnumbered lockers, and thus that area was most likely  subject
to his control; and (4) that the boxes that could be observed
through the chicken wire most likely belonged to Appellant and
could contain additional evidence relevant to the subject of the
criminal investigation.
         Proceeding with this information to seek a search warrant to
inquire into the contents of the boxes was exactly what was
appropriate under the circumstances of this case. The evidence
uncovered as a result of this procedure was thus legally
admissible against Appellant.
II.  Appellant's Attempted Withdrawal of Conditional Plea
         Four criteria have been established as determinative in
considering motions to withdraw guilty pleas: (1) the
plausibility of the reasons prompting the requested change of
plea; (2) the existence or not of an assertion of innocence; (3)
the timing of the motion; and (4) whether, when viewed in the
light of emergent circumstances, the plea was knowing, voluntary,
and intelligent, within what is mandated by Rule 11 of the
Federal Rules of Criminal Procedure. United States v. Muriel, 111
F.3d 975, 977 (1st Cir. 1997).
         Appellant does not claim any defect in the Rule 11 proceeding.  
The colloquy shows that there was none.  Appellant was thoroughly
questioned by the trial judge without any coercion being apparent
from the record or being claimed thereafter.  It further shows
that he clearly understood the charges against him, that he
voluntarily and intelligently admitted his guilt and the facts
sufficient to support these charges, and that he understood the
consequences of these actions.
          Against this scenario, we have Appellant's claim, made 16 months
after he entered his plea and 9 months after he was sentenced,
that he was unaware of the firearms contained in one of the boxes
found in the basement, which according to this latest version,
were brought into his house by his former wife in 1993, and then
stored in the basement.  To this, Appellant adds the insinuation
that the firearms were "planted" in these boxes by his former
wife's police officer boyfriend.    
         Fortunately, although perhaps less so for Appellant, we need not
enter this potential morass.  Appellant seems to overlook that he
was charged and convicted under Count Two of the indictment for
being a felon in possession of ammunition, in itself a violation
of  922(g), independent of the charges contained in Count One.  
None of his contentions affect his conviction on the second
count, because that count stemmed from the evidence seized in
Appellant's apartment, and was not based upon evidence taken from
his storage locker.  Appellant's conviction on Count Two alone
would have been sufficient to support the sentence he received.  
For this reason, all of the arguments raised as to Count One are,
in fact, irrelevant.                
         The district court did not exceed its discretion in denying
Appellant's request to withdraw his conditional guilty plea.
III.  The Sentencing Non-Issues
         Appellant's main contention regarding his sentencing is his claim
of improper inclusion of two state convictions as predicate
offenses to establish that he qualified as a career armed
criminal subject to mandatory sentencing under the Armed Career
Criminal Act ("ACCA"). 18 U.S.C.  924 et seq.
         It is settled law in this circuit that authority interpreting the
Sentencing Guidelines' definition of "crime of violence",
U.S.S.G.  4B1.2(1), is persuasive in interpreting the ACCA's
definition of what constitutes a violent felony pursuant to  
924(e)(2)(B) of that statute, and vice versa.  See United Statesv. Meader, 118 F.3d 876, 882-83 (1st Cir. 1997); United States v.
Fiore, 983 F.2d 1, 3 (1st Cir. 1992).  We have also unequivocally
held that conspiracy to commit a crime of violence, as defined in
the career offender guidelines, is itself a crime of violence for
purposes of its treatment under the Guidelines.  Fiore, 983 F.2d
at 3.  Considering that armed robbery is defined as a "crime of
violence" under ACCA, 18 U.S.C.  924(e)(2)(B), it is clear that
the district court committed no error in concluding that
Appellant's conviction for conspiracy to commit armed robbery was
a qualifying predicate to his being sentenced under the mandatory
minimum sentencing requirements of that statute. 18 U.S.C.  924
(e)(1).
         Because this conviction, in conjunction with Appellant's other
convictions for predicate offenses, is sufficient to qualify him
as a career armed criminal under  924(e), "we need go no
further."
         The district court committed no reversible error and Appellant's
conviction is therefore affirmed.

</body>

</html>