UNITED STATES of America, Appellee,

v.

Alfred H. BROWNING, Defendant, Appellant.

No. 7793.

United States Court of Appeals, First Circuit.

March 26, 1971.

John P. Bourcier, Providence, R. I., for appellant.

Lincoln C. Almond, U. S. Atty., with whom Constance L. Messore, Asst. U. S. Atty., was on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

Defendant was convicted on nine counts of an indictment charging him with violations of 18 U.S.C. § 2313 (1964).[1] Each count charged him with bartering, selling, and disposing of a motor vehicle "which was moving as, and was a part of, interstate commerce, he then and there knowing the same to have been stolen. * * * "

In each of the nine counts, the government showed that with one exception defendant had sold a stolen car to one of his fellow employees at the Quonset Point Naval Air Station. All the cars had been stolen in Massachusetts. The buyers testified generally that defendant said he could get them cars from a "friend" in Boston who was in the business of selling repossessed cars overseas. Most sales were for cash.[2] Defendant would

---

1. "Whoever receives, conceals, stores, barters, sells, or disposes of any motor vehicle or aircraft, moving as, or which is a part of, or which constitutes interstate or foreign commerce, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years, or both."

2. Defendant received only one check, which he cashed.

deliver the car in Rhode Island along with a bill of sale signed by a nonexistent seller. The bills of sale recited that the seller had received the full price stated therein, but in each case this amount was substantially greater than the price which the buyer actually paid the defendant. He instructed each buyer to pay a sales tax on the figure contained in the bill of sale.

Defendant testified that he began to sell automobiles after meeting one Gus Conte in June or July of 1967. According to defendant, Conte told him that he was in the automobile import-export business and that the defendant could earn a commission selling cars for him. Several weeks after their first meeting, Conte called the defendant to find out if he had any prospective customers. Defendant said he did not, and Conte said he would get "in touch" later. Defendant then spread the word to his fellow employees at Quonset that he could take orders for repossessed automobiles. In August 1967 one Begnal approached defendant to ask if the latter could obtain a 1966 Cougar for him. Defendant said he would find out. When Conte called again, defendant told him that he had a customer for a Cougar, color unspecified. Conte called defendant back some two weeks later and said that he had a good Cougar available. Defendant then arranged the sale with Begnal. He said he thought Conte delivered the car to him at his home on Saturday, August 19, and that the following Monday he delivered it to Begnal, collecting the money and delivering the bills of sale on Tuesday.[3] Defendant claimed this was his first sale for Conte. The government showed that this car had been stolen on August 20.

Earlier in the trial, Begnal had told a somewhat different story. He said that on the day he first approached the defendant, the latter told him he had four or five Cougars that Begnal could choose from. Begnal said he requested a white one with a black interior; but defendant delivered a red one. According to Begnal, defendant told him that the name of the seller on the bill of sale (Timothy O'Leary of Warwick, R. I.) was that of defendant's friend who worked in Boston in the car exporting business.

Except for the name of the seller and the sale price, each of the other eight transactions was carried out in substantially the same manner as the first one.

Defendant correctly contends that in a prosecution under 18 U.S.C. § 2313 the government must show (1) that the motor vehicle was stolen; (2) that the defendant sold it knowing it was stolen; and (3) that the motor vehicle was moving as or was a part of interstate commerce at the time it was sold. United States v. Brady, 425 F.2d 309 (8th Cir. 1970). At the close of the government's case, defendant moved for judgment of acquittal, arguing that there was no proof that, at the time the cars were sold, they were moving in interstate commerce. For example, defendant points out that the government showed in Count IX that a new Plymouth station wagon was stolen from a dealer in Medford, Massachusetts, on January 12, 1968. The purchaser testified that he received the car on January 10, 1968, at which time it had 16,000 miles on it. The discrepancy in dates[4] makes it impossible to say how much time actually elapsed between the theft and the receipt of the car by the purchaser. From this, defendant argues

---

3. Begnal paid $1350 on August 22. At that time, defendant gave him a handwritten bill of sale dated August 19, showing an $800 deposit, and another bill of sale dated August 22, showing a balance of $2000 paid.

4. Standing alone, testimony indicating that a car was delivered before it was stolen might have been fatal to Count IX.

However, the vehicle identification number in the records of the Medford dealer coincided with a hidden identification number found by the F.B.I. on the car sold by defendant. This evidence proved that the same car delivered to the Rhode Island customer was stolen from the Massachusetts dealer, all occurring "on or about January 10, 1968," as stated in the indictment.

that one cannot tell whether he sold this car while it was in interstate commerce. We find no merit in this contention. It was clearly established that the defendant was acting as an agent for a "friend," who was sending the cars to him from Boston. We think that, from this, the jury could reasonably find that defendant was the final link in an interstate chain having as its purpose the sale in Rhode Island of cars stolen in Massachusetts. Regardless of the time element between the theft and the sale, the characteristic of interstate commerce was preserved. United States v. Brady, *supra*, 425 F.2d at 313; Powell v. United States, 410 F.2d 710, 713 (5th Cir. 1969); McNally v. Hill, 69 F.2d 38, 40 (3d Cir.), aff'd, 293 U.S. 131, 55 S.Ct. 24, 79 L.Ed. 238 (1934).[5]

On cross-examination, the government asked defendant about the car belonging to his next-door neighbor, one Napollilo. Defendant denied having sold this car to Napollilo. The government then asked him whether he would be surprised to know that Napollilo's car was identified as a stolen vehicle. This was objected to on the grounds that defendant had already denied selling the car. Then the government changed the subject, questioning defendant about a car belonging to his wife. The government elicited from defendant that his wife had bought her car during "the warm weather; the summer of '67." After other questions involving this car's history, the government asked the defendant: "Would it surprise you if I told you that car was registered under a vehicle identification number that didn't go with that automobile?" Defendant's counsel objected strenuously and finally moved for a mistrial on the ground that the government

had injected an issue that could only be prejudicial to defendant. The district court excluded the testimony but did not pass the case. Defendant requested that the jury be instructed to disregard any evidence concerning the cars belonging to his wife or to Napollilo. No instruction was given with respect to the wife's car, and defendant objected to the instruction regarding Napollilo's car on the ground that it was not strong enough.

■■ On direct examination, defendant had testified as to how he met Conte and came to make his first car sale in August 1967. The government said it was questioning defendant about the cars belonging to his wife and Napollilo in order to shake his story that the Begnal sale was his first. We note that some courts will permit *all* assertions made by a defendant to be contradicted. *E. g.*, United States v. Beno, 324 F.2d 582, 588 (2d Cir. 1963), cert. denied, 379 U.S. 880, 85 S.Ct. 147, 13 L.Ed.2d 86 (1964). We need not go that far, for it is clear that the excluded testimony could have been relevant to the issues in the case. *See* 3A Wigmore, Evidence § 1004 (Chadbourn rev. 1970). "Evidence which goes towards proving a material fact in the case is admissible even if it incidentally shows that the accused committed another offense at a different time and place." United States v. Talk, 418 F.2d 53, 55 (10th Cir. 1969). In the instant case, the government was trying to discredit defendant's story by showing that he had dealt in stolen cars before August 1967, as this would have thrown into doubt the entire sequence of events which defendant had described. We think this was proper.[6] DeCarlo v.

---

5. Davidson v. United States, 61 F.2d 250 (8th Cir. 1932), relied upon by defendant, would have been more relevant if Conte had lived in Rhode Island. In that event, as it was never shown that Conte was connected with the thieves, there would have been a gap between the transportation and the sale which, in the absence of other evidence, might have broken the interstate chain.

6. Once defendant had denied selling a car to Napollilo, the government had no business trying to prove his car was a stolen automobile. But, contrary to the defendant, we think that the court clearly told the jury that it could not consider Napollilo's car for any purpose.

United States, 422 F.2d 237, 239–240 (9th Cir. 1970); Myers v. United States, 390 F.2d 793, 796 (9th Cir.), cert. denied, 392 U.S. 939, 88 S.Ct. 2314, 20 L.Ed.2d 1398 (1968); Friedman v. Fordyce Concrete, Inc., 362 F.2d 386, 389 (8th Cir. 1966); *see generally* Commonwealth v. Jackson, 281 S.W.2d 891 (Ky.1955). Furthermore, in light of the overwhelming evidence regarding *scienter*, we think that any error on this point could only be harmless. Fed.R.Crim.P. 52(a).

■ Defendant's remaining points may be dealt with summarily. Defendant was charged with selling and not with receiving stolen property. He admitted having possession of the property, based on his purported arrangement with Conte, testimony concerning which arrangement the jury did not have to believe. We see no reason why the inference of knowledge that a vehicle is stolen based on an unsatisfactory explanation of recent admitted possession is inoperative because the crime of receiving is not made part of the indictment. The trial court was correct in instructing the jury to that effect. Kramer v. United States, 408 F.2d 837 (8th Cir. 1969); Welch v. United States, 386 F.2d 189 (5th Cir. 1967). Taken as a whole, the instruction permitting the inference was properly presented to the jury. Harris v. United States, 367 F.2d 633, 636 (1st Cir. 1966), cert. denied, 386 U.S. 915, 87 S.Ct. 862, 17 L.Ed.2d 787 (1967). On appeal, the defendant argued that the instruction regarding interstate commerce was self-contradictory and that the term "interstate commerce" was not adequately defined. The instruction was correct as far as it went. Possibly it might have gone a little further had defendant so requested at the trial. But, he did not. His complaint does not even approach "plain error." Fed.R.Crim.P. 52(b); Defino Martone v. United States, 396 F.2d 229, 231 (1st Cir. 1968).

Affirmed.