**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Larry R. RADTKE,
Defendant-Appellant.**

**No. 85–2292.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 22, 1986.

Decided Aug. 18, 1986.

Charles E. Ruch, Kankakee, Ill., for defendant-appellant.

Frances Hulin, U.S. Attys. Office, Danville, Ill., for plaintiff-appellee.

Before COFFEY and FLAUM, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

COFFEY, Circuit Judge.

The defendant-appellant, Larry Radtke was convicted of four counts of receiving stolen motor vehicles, five counts of con-

cealing stolen motor vehicles, and one count of selling stolen motor vehicles moving in interstate commerce all in violation of 18 U.S.C. § 2313.[1] Radtke appeals his convictions and we affirm.

I

Larry Radtke was charged in a thirteen count indictment with violating 18 U.S.C. § 2313. Count I charged Radtke with knowingly receiving a stolen 1979 Ford truck and Count II charged Radtke with knowingly concealing this truck knowing the same to have been stolen. Counts III and IV charged Radtke with knowingly receiving (III) a stolen 1983 GMC van and knowingly concealing (IV) this van knowing the same to have been stolen. Counts V and VI alleged that Radtke knowingly received (V) and knowingly concealed (VI) a stolen 1979 Dodge truck. Radtke was charged in Counts VII and VIII with knowingly receiving (VII) and knowingly concealing (VIII) a stolen 1979 Chevrolet "Suburban." Counts IX and X alleged that Radtke knowingly received (IX) and knowingly concealed (X) a stolen 1979 Pontiac. Counts XI and XII charged Radtke with knowingly receiving (XI) and knowingly concealing (XII) a stolen 1982 GMC van. Counts I–XII alleged that the respective vehicles were stolen and were moving in interstate commerce between the States of Indiana and Illinois. Count XIII charged Radtke with selling a stolen motor vehicle, a 1980 Chevrolet pick-up truck, moving in interstate commerce between the State of Illinois and the State of Michigan.

The evidence at Radtke's trial revealed that in early 1984, agents of the Illinois State Police and the Illinois Department of Law Enforcement commenced an investigation of the defendant-appellant, Larry Radtke. As part of the investigation, in June, July, and August of 1984 the agents conducted surveillance of Radtke's business, Sollitt Sandblasting and Painting located in Sollitt, Illinois, as well as Radtke's residence and the residences of two of his acquaintances. During the investigation, agents observed six of the seven vehicles that formed the basis of Radtke's indictment for knowingly concealing and selling stolen vehicles at Sollitt Sandblasting and at various other locations. The seventh stolen vehicle, the 1979 Dodge truck, was observed at Radtke's residence in Beecher, Illinois. As a result of the investigation and surveillance, the agents obtained search warrants and executed them on August 30, 1980, resulting in the seizure of six of the stolen vehicles—the subjects of Counts I through XII. The seventh stolen vehicle, the 1980 Chevrolet pick-up truck, the subject of Count XIII of the indictment, was subsequently obtained in the State of Michigan in October 1980 from the person who purchased the truck from Radtke.

Following the seizure of the six stolen vehicles on August 30, Trooper Robert Cluver of the Illinois State Police inspected these vehicles, located and compared the public vehicle identification number ("VIN")[2] with the confidential VIN.[3] This comparison revealed that for each of the six vehicles inspected, the public VIN did not match the confidential VIN. Subse-

---

1. "Whoever receives, conceals, stores, barters, sells, or disposes of any motor vehicle or aircraft, moving as, or which is a part of, or which constitutes interstate or foreign commerce, knowing the same to have been stolen, shall be fined not more than $5,000.00 or imprisoned not more than five years or both." 18 U.S.C. § 2313.

2. "The VIN consists of more than a dozen digits, unique to each vehicle, and required on all cars and trucks. See 49 C.F.R. § 571.115 (1984). The VIN is roughly analogous to a serial number, but it can be deciphered to reveal not only the place of the automobile in the manufacturer's production run, but the

make, model, engine type and place of manufacture of the vehicle. See § 565.4." *New York v. Class,* —— U.S. ——, 106 S.Ct. 960, 964, 89 L.Ed.2d 81 (1986). The public VIN in passenger vehicles manufactured after 1969 is located in the passenger compartment, but must be visible from outside the vehicle and is located at the lower edge of the windshield near the driver's door. *Id.* 106 S.Ct. at 965.

3. Trooper Robert Cluver testified that the confidential VIN is a thirteen character number corresponding to the public VIN that is placed in a location on the vehicle not known to the general public.

quent investigation revealed that the confidential VIN's on the six stolen automobiles corresponded to the VIN's of other vehicles that had been stolen in the State of Indiana, while the public VIN's matched vehicles titled in the State of Illinois to Radtke's wife, his girlfriend, and the girlfriend of one of his employees.

The seventh stolen vehicle in question, a 1980 Chevrolet pick-up truck (the subject of Count XIII of the indictment), was observed at Sollitt Sandblasting in early June of 1984 where the vehicle was repainted and fitted with a new topper or cap for the pick-up truck cargo box. On June 16, agents observed two individuals arrive at Sollitt Sandblasting and drive the stolen Chevy pick-up truck away from the shop and out of the State of Illinois. Subsequent investigation revealed that Radtke sold the stolen truck to a resident of the State of Michigan. In October 1984, an officer of the Michigan State Police inspected the stolen pick-up truck in Michigan and discovered that the confidential VIN on the frame of the stolen truck did not match its public VIN, but did match the VIN of a truck stolen in Illinois on June 8, 1984.

Roger Blisset, a friend and employee of Radtke, testified at Radtke's trial about the alterations that had taken place on certain vehicles while stored at Sollitt Sandblasting. Blisset's girlfriend, Paula DiCicco, owned a 1975 Pontiac Firebird that was in poor condition. Blisset testified that in August of 1984 he brought DiCicco's Firebird to Sollitt Sandblasting and Radtke supplied him with a 1979 Firebird (that had recently been stolen in Indiana) to replace DiCicco's automobile. Blisset replaced the hood, bumper and grillwork of the stolen auto with parts from DiCicco's 1975 Firebird. Radtke's brother painted the stolen car and Radtke himself replaced the public VIN in the stolen 1979 Firebird with the VIN from DiCicco's 1975 Firebird. Blisset also testified that he assisted Radtke in removing the grill bearing a GMC emblem from a 1982 GMC van, replacing it with a grill bearing a Chevrolet emblem. According to Blisset, he and Radtke also replaced the square headlight assembly of the 1982

GMC van with a round headlight assembly to conceal the year and model of the van. Blisset further testified that he assisted Radtke in changing the grillwork of the 1983 GMC van, again replacing it with a different grill bearing a Chevrolet emblem. Blisset further testified that he assisted in the painting of the 1979 Chevrolet pick-up truck that Radtke subsequently sold to the Michigan resident.

At the conclusion of the government's evidence, the court granted the defendant's motion for acquittal on Counts V and VI (the 1979 Dodge truck) on the grounds that the government had failed to establish that the vehicle involved in those two counts had ever been present in the Central District of Illinois. At the conclusion of the trial, the jury returned verdicts of "guilty" on Counts I through IV, "guilty" on Counts VII and VIII, "guilty" on Counts X through XIII and "not guilty" on Count IX. The court sentenced Radtke to terms of four years concurrently on Counts I through IV. On Count VII and Count VIII and Count X through Count XIII, the court suspended sentence and on each count placed Radtke on probation five years, to be served concurrently. The court further ordered Radtke to pay restitution in the amount of $2,664.00 to the owners of the stolen 1979 Chevrolet Suburban named in Counts VII and VIII. Radtke appeals his convictions, raising three separate issues: (1) whether the government presented sufficient evidence to prove that the vehicles were moving in interstate commerce at the time of his activities; (2) whether the trial court erred as a matter of law in failing to hold an evidentiary hearing on the defendant's motion to suppress evidence and thus erroneously failed to suppress illegally seized evidence; and (3) whether the trial court erred in denying the defendant's motion for a mistrial based on the allegedly improper comments of the government's attorney during closing argument.

## II

■ In order to sustain a conviction under 18 U.S.C. § 2313, the government must

prove, *inter alia,* that "the motor vehicle involved was moving in interstate traffic at the time of the defendant's activities." *United States v. Thomas,* 676 F.2d 239, 242 (7th Cir.1980) (quoting *United States v. Brady,* 425 F.2d 309, 311 (8th Cir.1970)). *See also United States v. Thornley,* 707 F.2d 622, 625 (1st Cir.1983); *United States v. Browning,* 439 F.2d 813, 815 (1st Cir. 1971). "The question of interstate commerce is for the jury, and we must affirm if substantial evidence exists in the record to support the jury's verdict," *United States v. Pichany,* 490 F.2d 1073, 1077 (7th Cir.1973). Thus, as with all claims regarding the sufficiency of evidence in criminal cases, we must determine "whether, after reviewing the evidence in the light most favorable to the government, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original); *United States v. Chu,* 779 F.2d 356, 361 (7th Cir. 1985). In making this determination, we must also bear in mind that "[t]he fact finder [the jury] may draw reasonable inferences based upon the evidence presented." *Bujol v. Cain,* 713 F.2d 112, 115 (5th Cir.1983). Further, "circumstantial evidence is of equal probative value to direct evidence ... [and] may be the sole support for a conviction." *United States v. Marquardt,* 786 F.2d 771, 780 (7th Cir.1986). *See also United States v. Vretta,* 790 F.2d 651, 656 (7th Cir.1986). "If the government proves its case by circumstantial evidence, 'it need not exclude every reasonable hypothesis of innocence so long as the total evidence permits a conclusion of guilt beyond a reasonable doubt.' ... The trier of fact is free to choose among various reasonable constructions of the evidence." *Thornley,* 707 F.2d at 625. In the present case, the trial judge properly instructed the jury, "you should consider [the] evidence in the light of your own observations and experiences in life. You may draw such reasonable inferences as you believe to be justified from proved facts."

Radtke presents two separate and distinct arguments attacking the sufficiency of the government's evidence regarding the element of interstate commerce. Initially Radtke contends that the government's evidence failed to establish that the stolen vehicles that were the subjects of Counts I through IV, Counts VII and VIII, and Counts XI and XII were in any state other than Illinois at the time of their thefts. Radtke relies on this court's holding in *United States v. Wyatt,* 437 F.2d 1168 (7th Cir.1971), that a stolen car is not in interstate commerce if it has not been transported in interstate commerce between the time of the theft and the time of the defendant's illegal activity. Radtke points out that the owners of the 1979 Ford truck, 1983 GMC van, 1979 Chevrolet Suburban, and 1979 Pontiac Firebird failed to specifically testify that their vehicles were in the State of Indiana when stolen. According to Radtke, since there is no specific evidence that the vehicles were stolen in a state other than Illinois, there is no evidence that the stolen vehicles moved in interstate commerce.

In *Kramer v. United States,* 408 F.2d 837 (8th Cir.1969), the court stated:

"We have held repeatedly that possession in one state of property recently stolen in another state, if not satisfactorily explained, is ordinarily a circumstance from which the jury may reasonably draw the inference and find that the person in possession not only knew it to be stolen property, but also transported or caused it to be transported in interstate commerce."

*Id.* at 839. *See also United States v. Harris,* 528 F.2d 1327, 1331 (8th Cir.1975); *United States v. Brotherton,* 427 F.2d 1286, 1288 (8th Cir.1970).

A review of the record reveals that the certified title history for each of these vehicles recites that the vehicles were titled in and the owners' addresses were in the State of Indiana. The owner of the 1979 Ford truck specifically testified before the jury that he gave no one permission to take his 1979 Ford truck away from the parking lot of his business, Lane Furniture, in

"Gary." Both the certified title history and the bill of sale for his purchase state that the owner's business, Lane Furniture, is in Gary, *Indiana*. Thus it was from that parking lot in Indiana that the 1979 Ford truck was taken without his consent. (Tr. at 242–243)

The owner of the GMC van testified that she lived in Highland, Indiana, and that the van was gone when she came out of a bowling alley located in "Hinsville, which is a part of Hammond." (Tr. 270) "Hammond" was identified by a later witness as "Hammond, *Indiana*." Thus the jury could conclude beyond a reasonable doubt that the GMC van was stolen from Indiana.

The owner of the Chevrolet Suburban testified that she lived in Hammond, Indiana. She testified that she had driven the car to church at about 6:50 p.m., and that the car was no longer parked in the church parking lot when she returned after the church services. She also testified that she gave no one permission to operate the described vehicle on that date. (Tr. 248–249). Based on this testimony, the jury concluded that the Chevrolet Suburban was stolen from a church parking lot in Indiana.

The jury had additional evidence before it to enable it to conclude beyond a reasonable doubt that the Chevrolet Suburban was stolen from Indiana. The government prepared charts for the jury as summaries of the evidence against Radtke with respect to each count of the indictment. These demonstrative charts were two feet wide and three feet long in size and were in the courtroom in front of the jury throughout the trial. The demonstrative charts, referred to by the witnesses, as well as the prosecutor, were so conspicuous in size that the judge at one time during trial complained that they were blocking the witness' view of the defendant Radtke. At close of the trial the charts were given to the jury for their aid in its deliberations. (Tr. 734). Two of these charts, government exhibits C–1 and C–2, referred to the 1979 Chevrolet Suburban.[4] One of the prosecution's demonstrative charts, government exhibit C–2 specifically depicts that the 1979 Chevrolet Suburban was stolen from "Hammond, In."[5] (Govt. Ex. C–2). Robert Cluver, Ralph McClellan, Charles Grooss, John Sandusky, and Judy Anderson all testified as to the accuracy of the information depicted on the demonstrative chart C–2 which shows that the 1979 Chevrolet Suburban was stolen from Hammond, Indiana. (Tr. 135, 190, 205, 248, 454–55). John Sandusky, a Special Agent for the Illinois Department of Law Enforcement, Division of Criminal Investigation, testified as to the preparation of the charts. Sandusky stated that the charts were prepared from "documentation, photographs, evidence, title histories that we obtained in the investigation." (Tr. 455). Robert Cluver of the Illinois State Police testified about two photos, a dyno tape, and lift prints of vehicle identification numbers placed on charts C–1 and C–2. (Tr. 135–145). Charles Grooss and Ralph McClellan, both police officers, testified that Radtke's wife had possession of the Chevy Suburban depicted on Chart C–2. (Tr. 190) (Mr. McClellan) (Tr. 205) (Grooss). Mrs. Anderson testified that she recognized Government Exhibits C–6 and C–7 which were attached to Exhibit C–2 as photos of her stolen Chevrolet Suburban. (Tr. 248). The defendant Radtke's attorney questioned him on direct examination about the photos attached to the chart marked C–2. (Tr. 527).

---

**4.** Reproductions of demonstrative charts C–1 and C–2 are included herein.

**5.** "Hammond, In." as referred to in the government's exhibit C–2 is the abbreviated designation of the United States Postal Services for the city of Hammond in the state of Indiana.

304

**VEHICLE:** 1979 Chev. Suburban
**DESCRIPTION:** Creme Colored
**PREVIOUS OWNERS:**
1) Vern & Donna Havener - Kankakee, Il.
2) Cooley Bros. Body Shop - Bradley, Il.
3) Salley Radtke - Beecher, Il.
**LAST PURCHASED:** 9-20-83
**WHERE:** Cooley Bros.
**TITLED TO:** Salley Radtke
**PUBLIC VIN:** CCS169F159171

Exhibit C-3
(tyno tape)

(Exhibit C-4)
(l.f. print)

(Exhibit C-5)
(left print)

ACTUAL CHART SIZE - 2' by 3'

GOVERNMENT EXHIE~
C-2

(GOVERNMENT
EXHIBITS C-6, ...
(photos)
ATTACHED TO
C-2 ....
...

# VEHICLE: 1979 Chev. Suburban
# DESCRIPTION: Maroon & White
# STOLEN: Sept. 21, 1983 - Hammond, In.
# VIN: CCL169F104199
# OWNER: Alan & Judy Anderson
# RECOVERED: 8-30-84
RR1-Box 259 - Beecher, IL.
SA Grooss & Tpr Perona

# VINs on VEHICLE:

### CONFIDENTIAL: CCL169F104199

### PUBLIC: CCS169F159171

 

( Exhibit C-6 attached at all times chart )    (Exhibit C-7, attached a- all times to the chart)

ACTUAL CHART SIZE 2' by 3'

It is surprising that Radtke now argues on appeal that there was no evidence that Judy Anderson's 1979 Chevrolet Suburban was stolen from the state of Indiana when Radtke himself testified from exhibit C–2, reciting that the Chevrolet Suburban was stolen from Hammond, Indiana, and did not contest the accuracy of the information contained on the chart at trial. During crossexamination of Sandusky (agent who prepared exhibit C–2) Radtke's counsel in effect conceded the accuracy of the information on exhibit C–2 as he never questioned Sandusky concerning the accuracy of the information thereon. (Tr. 454–62). When the government moved to admit the

exhibits (12 charts), counsel for Radtke made a blanket objection stating that "I also object to all of the exhibits to the extent they have all these statements on them." (Tr. 464). The trial judge admitted the charts ruling that "I think it's a proper summary under 1006." (Tr. 465). "The weight to be given evidence and the reasonable inferences to be drawn therefrom is the prerogative of the jury." *United States v. Kennedy*, 564 F.2d 1329, 1342 (9th Cir.1977). Based on the evidence presented, the jury properly concluded that the Chevrolet Suburban was stolen from within the state of Indiana and transported into the state of Illinois.

The owner of the 1979 Pontiac Firebird testified that his car was "stolen" from his workplace in "Highland." (Tr. 281). The GMC van's owner had testified earlier that Highland is located in Indiana. The jury could therefore conclude beyond a reasonable doubt that the 1979 Pontiac Firebird was stolen in the State of Indiana.

We hold that there was sufficient evidence for the jury to conclude beyond a reasonable doubt that these four stolen vehicles were stolen in the State of Indiana. The view that "the prosecution's case must answer *all* questions and remove *all* doubts ... of course, is not the law because that would be impossible; the proof need only satisfy reasonable doubt." *Borum v. United States*, 380 F.2d 595, 599 (D.C.Cir.1967) (Burger, J. dissenting). *See United States v. Bush*, 749 F.2d 1227, 1234 (7th Cir.1984) (Coffey, J. concurring).

■ Radtke's second argument regarding the interstate commerce element asserts that even if the vehicles were stolen in Indiana, no evidence was introduced to show that he had any contacts with any of the vehicles in any state other than Illinois. Radtke recites that "at some point ... the interstate character of the theft of the motor vehicle terminates and individuals are no longer capable of being found to have violated 18 U.S.C. § 2313 even though they possess a stolen motor vehicle." Radtke maintains that the length of time between the theft of the vehicles in Indiana and the

evidence of his contact with the vehicles in Illinois precludes a finding that the vehicles were in interstate commerce at the time of his involvement with the vehicles.

It is true as Radtke asserts that "if a stolen vehicle has finally 'come to rest' in a particular state, future dealings with it by an individual do not constitute a violation of § 2313 even though the individual may be aware of the fact that the vehicle had been stolen." *United States v. Hiscott*, 586 F.2d 1271, 1274 (8th Cir.1978). But the court in *Hiscott* also stated, "a departure from the 'stream of commerce' is not necessarily established by the fact that after being stolen in one state and transported into another state, the vehicle remains in the latter state for a substantial period of time. And ordinarily the question of whether the vehicle was still in the stream of interstate commerce when the defendant dealt with it is one of fact for the jury." *Id.* The question is "based on common sense and administered on an *ad hoc* basis." *United States v. Kapp*, 781 F.2d 1008, 1011 (3d Cir.1986) (quoting *United States v. Garber*, 626 F.2d 1144, 1147 (3d Cir.1980), *cert. denied*, 449 U.S. 1079, 101 S.Ct. 860, 66 L.Ed.2d 802 (1981)). "A defendant need not know that the vehicle or goods are moving as interstate commerce; it suffices that his actions were in fact one step in a total scheme of interstate transportation." *Pichany*, 490 F.2d at 1077. The question of when the interstate character of a vehicle ends "depends on important factors such as the lapse of time after the interstate transport and what is done with the vehicle after the transport." *Kapp*, 781 F.2d at 1011–12.

"A number of ... courts have permitted a jury to infer from [the] defendant's unexplained possession in one state of a vehicle or goods stolen elsewhere, not only that the defendant knew the vehicles were stolen, but also that the defendant's activities were one step in the interstate transportation of the stolen vehicles or goods.... [T]he crucial element in these cases are (1) a relatively brief time span between the theft and

[the] defendant's possession, and (2) the absence of a credible explanation to refute the inference."

*Pichany*, 490 F.2d at 1078. In *Pichany*, we held that there was sufficient evidence to support the jury's finding of guilt on three counts of receiving and concealing stolen automobiles in violation of section 2313 where the defendant's explanation did not refute the inference of interstate commerce and the time span between the date of the theft and the date of the defendant's involvement with the vehicles ranged from three days to five months and seventeen days to nine months and fifteen days.[6]

We turn to a review of the evidence concerning each of the vehicles stolen in Indiana and subsequently observed in the possession of Larry Radtke. We begin with the 1983 GMC van which is the subject of Counts III and IV. The owner of the vehicle testified that the van was stolen on May 29, 1984. Radtke, testifying on his own behalf, produced a bill of sale reciting that he purchased the vehicle in Michigan on October 22, 1983, several months before the van was stolen in Indiana. This was an obvious fabrication as the vehicle was in the custody and control of the lawful owner as of that date. Further, Roger Blisset testified that he changed the grill work on the vehicle at Sollitt Sandblasting at the behest of Larry Radtke during the period he was working at Sollitt Sandblasting (June, July, and August of 1984). Even if Blisset did not work on the van until the end of August of 1984, barely three months elapsed between the time the vehicle was stolen in Indiana (May 29, 1984) and the time Blisset testified the vehicle was in the control of Radtke (August 1984 at the latest). The owner of the 1979 Pontiac Firebird which was the subject of Counts IX and X testified that it was stolen on August 11, 1984 and Blisset testified that Radtke supplied the stolen vehicle to him

"toward the end" of the time he worked at Sollitt Sandblasting. Indeed Radtke himself admitted that Blisset was working on the vehicle in his shop on the 13th and 14th of August 1984 (Radtke, however, claimed that it was Blisset who brought the 1979 Pontiac to the shop). Thus, less than a week passed between the theft of the 1979 Pontiac and the date Radtke supplied the vehicle to Blisset. The owner of the 1982 GMC van which is the subject of Counts XI and XII of the indictment testified that it was stolen on October 18, 1983 and Radtke himself stated that he bought the vehicle in the late part of 1983, and Sandra Martin (Radtke's girlfriend) testified that Radtke gave her the van in "October or November of 1983." Consequently, the evidence at trial placed the 1982 GMC van in the hands of Radtke less than two months after the van was reported stolen in Indiana. Thus with respect to the 1983 GMC van, the 1979 Pontiac Firebird, and the 1982 GMC van, the testimony established that the vehicles were in the possession of Radtke within three months, one week, and two months of their thefts respectively. Since the time period that elapsed between the theft and Radtke's possession of these three vehicles is less than the five-month period that was found to be "well within the bounds of reason" in *Pichany*, and since Radtke has failed to offer a credible explanation for his possession of these vehicles, the jury could reasonably conclude from the evidence that the vehicles retained their interstate character at the time of Radtke's activity with the vehicles.

■ The 1979 Ford truck mentioned in Counts I and II and the 1979 Chevrolet Suburban that is the subject of Counts VII and VIII present a closer question. The owner of the 1979 Ford truck testified that it was stolen in May of 1983 and agents

---

**6.** *Pichany* did not establish an outer limit for the permissible lapse of time within which a vehicle may be found to be moving in interstate commerce. The court held that where the time span between the theft of the vehicle and the defendant's contact with the vehicle was five months, seventeen days a finding that a vehicle had been

moved in interstate commerce was "well within the bounds of reason." The court went on to note that a time span of nine months, fifteen days might stretch the inference of the vehicle moving in interstate commerce to the outer limit but did not conclude that such an inference was unreasonable.

conducting surveillance testified that they observed the vehicle at Sollitt Sandblasting in Illinois in the summer of 1984. Thus more than one year had passed between the date the vehicle was stolen in Indiana and the first time agents observed it in Radtke's possession in Illinois. Radtke testified that he purchased the vehicle on August 25, 1978 and the Illinois title application for the vehicle recited the date of purchase as 8/25/78. Since the purported purchase of the vehicle predates the theft by nearly five years, Radtke's explanation that he purchased the vehicle in 1978 obviously lacks credibility. Similarly with respect to the 1979 Chevrolet Suburban, the testimony established that the vehicle was stolen in Indiana on September 21, 1983 and the surveilling agents observed the vehicle at Sollitt Sandblasting in Illinois in the summer of 1984. Thus, at a minimum, nearly nine months elapsed between the date the vehicle was stolen and the date the agents first observed it in the possession of Radtke. The Illinois title application for the 1979 Suburban recites a purchase date of either 7/20/83 or 9/20/83 (the document is unclear and Radtke could not recall which month the vehicle was purchased.) Whichever date is accurate, the title application again reveals a purchase date prior to the date the vehicle was stolen. Thus, Radtke's explanation of his possession of the 1979 Ford truck and the 1979 Suburban is not believable as it would be impossible for him to purchase the vehicles in question before they were stolen from their Indiana owners. The remaining question is whether too much time had elapsed between the theft of the vehicles and Radtke's contact with the vehicles to terminate the interstate commerce character of the vehicles. In *United States v. Browning*, 439 F.2d 813, the defendant claimed since the buyer of a vehicle testified that he purchased the automobile prior to the date it was stolen, it was impossible to determine how much time actually elapsed between the theft and the receipt of the vehicle by the purchaser.

The court affirmed the conviction, concluding that "[r]egardless of the time element" the jury could reasonably find that the defendant was the final link in an interstate chain where the evidence established that the defendant was acting as an agent for a "friend" who was sending the car to him from another state. *Id.* at 816. In *United States v. Thornley*, 707 F.2d 622 (1st Cir.1983), the defendant also challenged his conviction for a § 2313 violation on the grounds that the stolen vehicle had ceased to move in interstate commerce at the time of the sale. The court citing *Browning*, noted that the stolen vehicle involved was part of "a well-coordinated salvage/switch operation orchestrated by [the defendant]." The court concluded that there was "ample evidence upon which the jury could have concluded that the interstate odyssey continued without significant interruption until the moment of sale." *Id.* at 626.

In the present case, since the purchase dates as shown on the Illinois title application for the 1979 Ford truck and 1979 Chevrolet Suburban are obviously false, the title applications do not provide reliable or believable evidence as to when the vehicles actually came into Radtke's possession. But, as in *Thornley*, the record discloses a "well-coordinated ... operation orchestrated by" Radtke. We conclude that the evidence of Radtke's involvement in the receipt and concealment (salvage/switch) of stolen vehicles combined with his lack of a credible explanation for his possession of the vehicles provides sufficient evidence from which the jury could reasonably conclude that the 1979 Ford truck and the 1979 Chevrolet Suburban were moving in interstate commerce at the time of Radtke's receipt and concealment of the vehicles. We hold that the government presented more than sufficient evidence at trial for the jury to find beyond a reasonable doubt that the vehicles were moving in interstate commerce at the time of Radtke's involvement with the vehicles.[7]

---

**7.** We find no merit to the contention raised in Radtke's reply brief, that the 1979 Chevrolet

pick-up truck the subject of Count XIII of the indictment was not in interstate commerce at

### III

Prior to trial, Radtke filed a motion to suppress the evidence (the automobiles seized in Illinois as well as various documents relating to the vehicles, e.g., title certificates, bills of sale) seized pursuant to search warrants issued in the Central and Northern Districts of Illinois. Radtke's motion maintained that "the affidavits did not establish by facts legally ascertainable that there was probable cause to believe that the defendant had committed any crime or was committing any crime or that the items seized were evidence of any crime. . . ." Radtke attempted to introduce the videotape of the government's surveillance to allegedly prove that the government could not have legally obtained the information (VIN's) set forth in the affidavits. After examining and reviewing Radtke's motion papers together with the affidavits supporting the search warrants, the district court denied the motion to suppress and refused to review any evidence in addition to the affidavits and warrants. On appeal, Radtke argues that the trial court's failure to hold an evidentiary hearing on the suppression motion "is contrary to *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978)."

"A *Franks* hearing affords a defendant the opportunity to show, by a preponderance of the evidence, that the warrant affidavit contained perjury or a reckless disregard for the truth. If the defendant meets this burden, the court will set aside that 'false material' contained in the warrant affidavit, and if probable cause cannot be established from the valid and truthful portion of the affidavit, the entire search warrant is deemed to be invalid and the ensuing search is void."

*United States v. McDonald,* 723 F.2d 1288, 1292 (7th Cir.1983). We begin our analysis

with "a presumption of validity with respect to the affidavit supporting the search warrant." *Franks,* 438 U.S. at 171, 98 S.Ct. at 2684. This presumption of validity can be overcome—the Supreme Court stated in *Franks:*

"[W]here the defendant makes a substantial preliminary showing that a false statement knowingly or intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request."

438 U.S. at 155–56, 98 S.Ct. at 2676–77. The Court further recited that:

"The deliberate falsity or reckless disregard whose impeachment is permitted . . . is only that of the affiant, not of any non-governmental informant."

*Id.* at 171, 98 S.Ct. at 2684.

Radtke contends that he satisfied the *Franks* test in that the motion to suppress and the supporting memorandum alleged that the search warrants were based on information which could not have been legally obtained. Radtke offered the testimony of the affiant and the videotape surveillance of Radtke's activities at the Sollitt Sandblasting operation in an attempt to establish that the VIN's proving the vehicles were stolen could only have been obtained through an illegal search since the VIN numbers were not in plain view. Radtke also asserts that the affiant's subsequent testimony at trial that he did not at any time "have occasion to examine" the VIN's from the stolen vehicles "contradicts the affidavits used to establish probable cause."

Radtke's motion to suppress and his statements to the court at the hearing on the motion failed to set forth "allegations

the time of Radtke's sale of the vehicle. Radtke was charged with selling the vehicle while it was moving in interstate commerce between Illinois and Michigan. The evidence established that the vehicle was stolen in Illinois and that Radtke sold it to a resident of Michigan on June 16, 1980, who returned with it to Michigan. We

do not comprehend how Radtke could argue on appeal that a stolen vehicle stolen in Illinois, sold by an Illinois resident to a Michigan resident, and subsequently transported to the purchaser's home state of Michigan is not moving in interstate commerce.

**310**

of deliberate falsehood or reckless disregard for the truth." "To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine." *Franks* 438 U.S. at 171, 98 S.Ct.at 2684. In a futile effort to find a falsehood in the affidavit, Radtke refers to the trial testimony of Officer John Sandusky, the affiant, that he did not examine the VIN numbers from the stolen vehicles. We fail to understand how Sandusky's testimony proves a falsehood, let alone a deliberate falsehood, as his sworn affidavits do not assert that he personally obtained the VINs, but instead compiled information gathered in the course of the investigation conducted by the Illinois State Police and the Illinois Department of Law Enforcement. Thus from the evidence presented at the hearing on the motion to suppress, we hold that Radtke has failed to make a substantial preliminary showing that the affiant, Officer Sandusky, "knowingly or intentionally or with reckless disregard for the truth" falsified the affidavit. We conclude that Radtke failed to even come close to overcoming the presumption of validity attaching to a search warrant affidavit and thus was not entitled to a *Franks* hearing.

IV

■ Radtke's final complaint concerns certain comments of government counsel in its closing argument. The government's counsel stated:

"He knew that they were stolen in Indiana and that they came into his possession. For purposes which we'll discuss briefly, and they were stolen in Indiana, perhaps at his behest."

Radtke objected to this passage of the government's argument. The court sustained the objection and directed the jury "to disregard the 'perhaps they were stolen at his request.' [sic]" Radtke then moved for a mistrial, which the court denied. Radtke now argues that the government's comment was an attempt to "taint the defendant with the theft of the motor vehicle" and it was prejudicial error to attempt to establish an interstate commerce connection by linking the defendant to the theft in Indiana when, according to Radtke, "there was no interstate commerce connection established through evidence at trial."

"Although inflammatory argument may be grounds for reversal, the government should not be restricted to a sterile recitation of uncontroverted facts." *United States v. Chu,* 779 F.2d 356, 370 (7th Cir. 1985) (quoting *United States v. Scott,* 660 F.2d 1145, 1177 (7th Cir.1981)). "It is a fundamental rule that closing arguments are limited to facts in evidence.... Counsel may also make arguments, however, 'reasonably inferred from the evidence presented.' ... Inferences, however, must be 'fair comment on the evidence,' and not 'akin to the presentation of wholly new evidence.'" *United States v. Doyle,* 771 F.2d 250, 258 (7th Cir.1985) (citations omitted). In the present case, the government introduced evidence sufficient to support a jury finding that Radtke was repeatedly involved in the receipt and salvage and switch of vehicles stolen in Indiana. Roger Blisset specifically testified that when he and Radtke decided to replace Paula DiCicco's Pontiac Firebird with another vehicle, the defendant Larry Radtke supplied a 1979 Pontiac Firebird that had been stolen in Indiana and which was subsequently altered to appear to be DiCicco's 1975 Firebird. In view of Radtke's repeated contact with vehicles stolen in Indiana, and his supplying a specific make of automobile to replace the rusted out Firebird belonging to DiCicco, we conclude that the government counsel's remark that vehicles were stolen in Indiana "perhaps at his behest" was a fair comment on the evidence and could be "reasonably inferred from the evidence presented." *See* 771 F.2d at 258.

■ We hasten to note that even if we were to find the prosecutor's comment to be improper, "we are to consider the prosecutor's conduct not in isolation, but in the context of the trial as a whole to determine if such conduct was 'so inflammatory and prejudicial to the defendant ... as to deprive him of a fair trial....'" *United*

*States v. Chu,* 779 F.2d at 370. Radtke has cited a lone passage from the government's argument quoted above as improper conduct on the part of the government. Our review of the record has failed to reveal any other questionable conduct on the part of the government. Since the court promptly directed the jury to disregard the comment complained of, we conclude that in the context of the trial as a whole, the government's comment in closing argument, even if construed to be improper, did not rise to that degree of an inflammatory and prejudicial remark so as to deprive Radtke of a fair trial.

V

The judgment of the district court is AFFIRMED.

FLAUM, Circuit Judge, concurring in part and dissenting in part.

I join the majority's thorough opinion except for the portion dealing with Radtke's conviction under Counts VII and VIII for receiving and concealing a stolen 1979 Chevrolet Suburban. I am not convinced that the government established beyond a reasonable doubt that this vehicle was stolen in Indiana, a necessary part of the interstate commerce element of both counts. The record is devoid of any direct evidence demonstrating that the vehicle was in Indiana at the time of its theft: the only possible indirect evidence that could even suggest its location was the testimony of its owner, who stated that she lived in Hammond, Indiana and drove the vehicle to church, where it was stolen. Had the owner lived in Indianapolis or another more interior Indiana city, this may well have constituted sufficient indirect evidence to raise an inference that the owner's church also was in Indiana. Hammond, however, is on the border between Indiana and Illinois, and many Hammond residents cross the state line regularly to engage in social as well as commercial activities. The owner's testimony, therefore, and the legitimate inferences that the jury could draw from it, do not establish beyond a reasonable doubt that the Chevrolet Suburban was stolen in Indiana.

I am similarly unpersuaded by the majority's treatment of the government's demonstrative chart as substantive evidence. Charts prepared by one party often are useful tools that enable the jury to visualize and organize the large volume of data produced by trial testimony. These charts do not, however, constitute substantive evidence. Instead they should only reflect evidence already in the record. Moreover, they do not relieve the government of its burden of producing evidence to establish every element of its case. The government failed to produce satisfactory evidence demonstrating the location of the vehicle's theft, and the demonstrative chart that it prepared simply cannot carry the day. Moreover, Radtke's attorney properly objected to the government's attempt to have the chart admitted as a summary under Federal Rule of Evidence 1006, and in my judgment the trial court's decision to treat it as a Rule 1006 summary was erroneous to the extent it allowed the inference that the 1979 Chevrolet was stolen in Indiana.

For these reasons, I would reverse the Count VII and Count VIII convictions.