NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued January 25, 2022
Decided February 7, 2022

**Before**

KENNETH F. RIPPLE, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

CANDACE JACKSON-AKIWUMI, *Circuit Judge*

No. 21-1292

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 17-cr-00381-2 |
| MELVIN WATSON, *Defendant-Appellant.* | Andrea R. Wood, *Judge.* |

## O R D E R

Melvin Watson was convicted after a bench trial of unlawful possession of a firearm, in violation of 18 U.S.C. § 922(g). In this court, he challenges only the denial of his motion for a judgment of acquittal. He maintains that the government's circumstantial evidence that he hid a gun in a car trunk was insufficient as a matter of law to prove possession, because one link in the chain relied on impermissible speculation. As we read the record, however, the evidence supported a reasonable inference, without resort to speculation, that *someone* must have stashed the gun in the trunk and that Watson was the sole person who plausibly could have done so. We therefore affirm the district court's judgment.

**I**

Because Watson appeals the denial of his motion for a judgment of acquittal, we recount the facts in the light most favorable to the government. *United States v. Jackson*, 5 F.4th 676, 682 (7th Cir. 2021). A shooting took place on Chicago's south side on September 6, 2016. Several people immediately called 911 and reported hearing shots. Video from a city surveillance camera showed a white Cadillac leaving the scene seconds before people began to flee. Police officers Regan Allen and Mari Medina soon arrived on the scene and learned from a witness that the shots came from a white Cadillac DTS with two men inside. The witness pointed the officers in the direction the car had gone.

After driving a few blocks, the officers saw a white Cadillac DTS with two male occupants. After trying unsuccessfully to pull the car over, the officers tailed it. The day was sunny, and the officers had a clear view. They saw a man in the passenger-side backseat who repeatedly looked back at the police car. Officer Medina observed the passenger "trying to duck, and leaning towards his left." Officer Allen saw him "mov[ing] up and down several times," "hard at work with the backseat," and "pulling, tugging, doing something with the seats in the back." They saw no one enter or leave the Cadillac.

The Cadillac pulled over about 40 seconds after the officers began following it. Just under three and a half minutes had elapsed between the first 911 call about the shooting and the stop, as reflected in time-stamped entries in the dispatcher logs. Officers Matthew Coffey and Daniel Vasquez soon arrived as reinforcements, at which point the four officers removed the occupants from the car and handcuffed them. The passenger in the backseat was Watson, and the driver was Alfred Withers.

Inside the Cadillac's trunk, Officer Coffey found two firearms, which were within arm's reach of Watson's seat. The trunk was accessible from that seat through an open plastic access panel behind the center armrest, and the armrest was ajar. An evidence technician later identified the firearms as a Sig Sauer and a Springfield Armory, both semi-automatic pistols. Officers Allen and Medina also spotted a spent shell casing on the car's exterior by the rim of the trunk. After the officers found the firearms, Watson, still detained in handcuffs and under guard, tried to flee down a nearby alley. Officer Coffey caught him after a brief foot chase.

Ballistics evidence later connected the Sig Sauer pistol to the south-side shooting. Four spent shell casings were recovered from the scene of the shooting, and a ballistics

expert concluded that all four, plus the casing recovered from the car, were fired from the Sig Sauer. (No evidence tied the Springfield Armory pistol to the shooting.)

Watson and Withers were charged as codefendants with one count each of unlawful possession of a firearm by a felon. 18 U.S.C. § 922(g). Watson pleaded not guilty. Withers eventually pleaded guilty in a separate criminal case pursuant to a written plea agreement that included admissions about his conduct in this case; he was then dismissed from this case.

Watson's case proceeded to a five-day bench trial, at which the government attempted to prove that he had hidden the two pistols in the trunk and thus had actually possessed them. (All other elements of the offense were established by stipulations between the parties.) Officers Allen and Medina testified about receiving the tip that sent them looking for a white Cadillac, spotting and following the Cadillac, and finding the pistols. Officers Coffey and Vasquez corroborated Allen's and Medina's testimony about the events after the Cadillac stopped.

Several expert witnesses also testified. A fingerprint-analysis expert, who tested the pistols and ammunition for fingerprints, testified that no fingerprints were found, though he added that recovering fingerprints from firearms is usually impossible. A forensic scientist testified that she analyzed DNA samples taken from both firearms but could not determine whether any of the DNA belonged to Watson. (By contrast, Withers's DNA made up a significant portion of the sample from the Springfield Armory.) A detective testified that tests of Watson's hands several hours after his arrest revealed no gunshot residue, but that gunshot residue was found on Watson's shirt.

The defense called one witness, the Cadillac's owner, who was Withers's fiancée and Watson's close family friend. She initially testified that the Cadillac's rear windshield and backseat windows were tinted to the point that it was impossible to see through them at all. Later, however, when looking at a photograph of the Cadillac on cross-examination, she admitted that she could discern objects despite the tinted windows.

The district judge, acting as factfinder at the bench trial, returned a guilty verdict. She found that the government had proven beyond a reasonable doubt that Watson possessed the Sig Sauer pistol, though she made no finding regarding the Springfield Armory. The judge explained in an oral ruling why the government's evidence was sufficient. She drew two key inferences from the evidence. First, she observed that the ballistics evidence established that the Sig Sauer was fired during the shooting and

recovered from the Cadillac's trunk less than four minutes later; she thus inferred that *someone*, in that short period of time, had moved the Sig Sauer from the passenger compartment to the trunk. Second, she inferred that Watson was the only person who could plausibly have done so: He was in the backseat in a position to hide the gun through the access panel, while Withers was in the front seat driving. The car had no other occupants. The judge rejected the notion that any "other improbable occurrence" could account for the Sig Sauer's moving from the shooter's hands to the trunk in that short window of time. Moreover, the officers' observation of Watson's movements in the back seat bolstered the inference that Watson hid the guns. The judge gave no material weight to Watson's attempted escape.

Watson moved for a judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure. He argued that with no direct evidence tying him to the shooting or the firearms, the guilty verdict rested on conjecture and was insufficient as a matter of law. The judge denied his motion, ruling that Watson's guilt could be proved through circumstantial evidence:

> Less than five minutes elapsed between the shooting and the traffic stop, and an even shorter period of time elapsed between the shooting and Officers Medina and Allen's initial encounter with the white Cadillac. Officers Medina and Allen's testimony, along with dashboard camera video footage, establishes that during the period the officers were following the white Cadillac, nobody entered or exited the vehicle. Thus, the two people inside the vehicle when it was finally pulled over were the only people in the vehicle during the period it was followed by Officers Medina and Allen. This leaves only a very short period of time for anyone but Watson to have hidden the Sig Sauer while the white Cadillac was not in view of the police. For the driver (Withers) to hide the gun, he would have had to drive a safe distance from the site of the shooting, exit the vehicle, open the trunk, hide the Sig Sauer under the carpet in the rearmost portion of the trunk, return to the driver's seat, and resume driving. Alternatively, if some third person hid the Sig Sauer, that person would have had to hide the weapon and then leave the vehicle on foot—despite being in close proximity to the site of a shooting perpetrated by an occupant of the vehicle he or she was exiting—all before Officers Medina and Allen encountered the white Cadillac. Neither of these scenarios are plausible.

By contrast, the conclusion that Watson hid the Sig Sauer not only plausibly fits with the timeline but is also supported by other evidence. Specifically, Officers Medina and Allen testified that they saw the backseat passenger make effortful body movements while they were following the white Cadillac. The Court reasonably inferred that those body movements were indicative of Watson working to access the passthrough and hide the Sig Sauer. Further, the placement of the firearm within an arm's length of the backseat passthrough supports an inference that the Sig Sauer was hidden in the trunk by way of that passthrough. Viewing all the evidence together, it is clear that someone hid the Sig Sauer and the evidence points to the backseat passenger, Watson. And to hide the firearm, Watson necessarily had to bring it into his immediate physical possession.

The judge relied on three cases to show how this type of circumstantial evidence may support a guilty verdict: *United States v. Townsend*, 924 F.2d 1385 (7th Cir. 1991); *United States v. Starks*, 309 F.3d 1017 (7th Cir. 2002); and *United States v. Radtke*, 799 F.2d 298 (7th Cir. 1986).

## II

On appeal, Watson primarily argues that the evidence was insufficient because it was tainted by impermissible speculation. That argument can succeed only if, viewing all evidence in favor of the government, no rational trier of fact could have found the defendant guilty—a "nearly" (though not completely) insurmountable hurdle. *Jackson*, 5 F.4th at 682 (internal quotation omitted); *United States v. Doody*, 600 F.3d 752, 754 (7th Cir. 2010). We take a *de novo* look at the evidence. *Jackson*, 5 F.4th 676, 682 (7th Cir. 2021).

Watson asserts that the fatal missing link in the evidence occurs during the three-and-a-half-minute window after the shooting. The district court erred, he argues, by concluding that this period was too short for anyone other than Watson to have stashed the pistol. He brands the court's contrary conclusion as resting on sheer speculation, not acceptable circumstantial evidence. And he relies heavily on the absence of any direct evidence showing that he ever touched the pistol.

Bearing in mind the standard of review, we do not see the evidence that way. The district court appropriately concluded that, if viewed in the prosecution's favor, the circumstantial evidence would permit a reasonable factfinder to conclude that Watson placed the Sig Sauer in the Cadillac's trunk. The court permissibly credited the testimony of Officers Medina and Allen, who believed that Watson's movements in the

back seat matched those of a person stashing something behind the access panel. Moreover, the court considered and reasonably dismissed as implausible the idea that the Sig Sauer was placed in the trunk by Withers (or even by a third person, who would have had to escape notice altogether). Because the evidence was sufficient to support the verdict, the government was not required conclusively to disprove every alternative scenario. *United States v. Colon*, 919 F.3d 510, 516 (7th Cir. 2019) (quotations omitted).

Watson tries to compare his facts to those in *United States v. Jones*, 713 F.3d 336, 339 (7th Cir. 2013), in which this court upheld a judgment of acquittal because gaps in the government's evidence could be filled only by "too much speculation." There, the government sought to prove the defendant cooked crack cocaine by using circumstantial evidence of the defendant's association with a drug dealer and his presence at a house where criminal activity may have occurred. *Id.* at 349. But the speculation required to convict Jones was substantial. The government lacked evidence that he spent significant time in the house, that he possessed cocaine or agreed to cook crack, or that any drugs were inside the house at all. *Id.* at 348–49. Those gaps in the evidence are far larger than any here.

Watson also argues that the district court misapplied precedent in relying on a trilogy of cases to conclude that the evidence was sufficient. See *Townsend*, 924 F.2d at 1390; *Starks*, 309 F.3d at 1021; *Radtke*, 799 F.2d at 302. Watson regards these cases as distinguishable because, in each, circumstantial evidence was used to prove something other than actual possession. But Watson's narrow factual objection obscures the court's broader reason for citing these cases—that circumstantial evidence alone can be probative of guilt.

Watson next attempts to analogize his circumstances to three cases in which the defendant's mere presence in a car that turned out to contain a hidden firearm was deemed insufficient to support a possession conviction. See *United States v. Chairez*, 33 F.3d 823, 825 (7th Cir. 1994); *United States v. Soto*, 779 F.2d 558, 560 (9th Cir. 1986); *United States v. Blue*, 957 F.2d 106, 108 (4th Cir. 1992). But those cases are distinguishable. In each, the government could not prove when the firearm was hidden, and so the gun could have been concealed long before the defendant arrived. Here, in contrast, the government established that the gun moved from the passenger compartment to the trunk while Watson was the only passenger.

Next, Watson challenges the court's finding that the government met its burden with respect to only one of the two pistols.   He argues that this conclusion lacks support

in the evidence because the government consistently argued at trial that he possessed both guns.

The court, however, had a perfectly sound reason for finding that Watson possessed the Sig Sauer but not necessarily the Springfield Armory. Bullets from the Sig Sauer were found at the scene of the shooting, and so it must have been moved to the trunk after the shooting. But with no evidence tying the Springfield Armory to the shooting, that gun could have been placed in the trunk at any time—either simultaneously with the Sig Sauer (in which case Watson must have hidden both pistols) or some time before the shooting (in which case Watson might never have touched the Springfield Armory).

We AFFIRM Watson's conviction.